.VOHLAND, Appellant, vs. GELHAAR, Respondent.
SAME, Respondent, vs. SAME, Appellant.

*May 13—June 5, 1908.*

*Contracts: Validity: Statute of frauds: Sales: Agreement to take back at advanced price: Entire contract: Part performance.*

1. A finding by the jury that defendant agreed to repurchase mining stock sold by him to plaintiff within one year from the date of the sale, is *held* to be sustained by the evidence; and sec. 2307, Stats. (1898), is therefore inapplicable.
2. Where, as a condition of the sale of mining stock, the vendor agreed that he would, at the vendee's request, repurchase it within a year at an advanced price, there was but one entire contract, and delivery of the stock and payment therefor by the vendee constituted such part performance as satisfied the statute of frauds—sec. 2308, Stats. (1898),—and entitled the vendee, upon due demand, to recover the advanced price.

APPEALS from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge.   *Reversed on plaintiff's appeal.*

This case comes before this court on appeals by both the plaintiff and defendant from a judgment of the circuit court

for Milwaukee county in favor of the plaintiff and against
the defendant for the sum of $300, interest and costs,
amounting in all to $403.52. The plaintiff brought action
to enforce an agreement between the parties, by which the
defendant promised to repurchase from the plaintiff 600
shares of mining stock for $1 per share, which at the time of
making the agreement was sold by the defendant to the plaint-
iff for fifty cents per share. The condition upon which the
defendant was to repurchase the stock was that the plaintiff
should tender a return thereof within one year from the date
of sale, which took place November 15, 1902. The plaintiff
tendered back the stock within a year and demanded $600
therefor, in accordance with the agreement, but the defendant
refused to repurchase the same and pay said sum. The issue
of fact as to whether such agreement was made was decided
in a special verdict by the jury in favor of the plaintiff.
Upon this verdict the court rendered a judgment for $300 in-
stead of for $600, in accordance with the agreement. The
plaintiff contends that the court should have rendered judg-
ment for $600, with interest and costs, while defendant in-
sists that the special verdict was contrary to the evidence and
that the contract to repurchase was void because within the
statute of frauds (secs. 2307, 2308, Stats. 1898).

For the plaintiff there was a brief by *Fred C. Lorenz,* and
oral argument by *Mark A. Cline.*

*John F. Thieman,* for the defendant.

BASHFORD, J. The defendant contends that the finding of
the jury that he agreed to repurchase the stock sold the
plaintiff within one year from the date of sale is not sup-
ported by the evidence, and consequently that such an agree-
ment, if made, no part thereof having been reduced to writ-
ing, was void under sec. 2307, Stats. (1898). The plaint-
iff testified that the defendant stated to her repeatedly, when
trying to sell her the stock: "If you buy these shares, if you

don't want them in the time of a year, I take them back
for a dollar a share; " and that this was the consideration for
the purchase of the same by her at fifty cents a share.    Her
son, who was present, testified that the defendant stated that
the money was needed for a smelter and that the mine would
pay dividends before Christmas, and "made plaintiff the
proposition, if she would take the shares, that he would agree
to take them back within a year at a dollar a share."    Plaint-
iff's husband, who acted as her agent in part of the negoti-
ation, stated that the defendant made similar representations
to him.    Another witness, who was in the employ of the
plaintiff at the time the purchase was made, fully corrobo-
rated her testimony that if she did not want the stock defend-
ant would take it back at $1 a share at the "time of a year."
This witness, as well as the plaintiff, did not speak English
with accuracy, and the idea intended to be conveyed by the
words quoted, as understood by the jury, was that the defend-
ant would take back the stock at the end of the year or within
the year.    This proof was sufficient to warrant the finding of
the jury as to the terms of the agreement and consequently
sec. 2307 has no application.

A more difficult question arises on the application of sec.
2308, Stats. (1898).    The third subdivision of that section
renders the agreement to repurchase the stock void, if it be
treated as an independent contract, unless the plaintiff at the
time it was made paid some part of the consideration there-
for.    The plaintiff maintains that the statute does not apply
because the agreement to buy the stock by the plaintiff and to
repurchase the same by the defendant at her request within
the year was one entire contract, which had been fully per-
formed by the delivery of the shares and the payment of the
original purchase price.    The defendant contends that the
sale of the stock to the plaintiff and the agreement to repur-
chase were separate and independent contracts and that the
latter is avoided by the statute.    The trial court apparently

adopted the view that the transaction established an entire contract, but held that the agreement to repurchase embodied two elements, the first giving the plaintiff the right to rescind the sale and to demand a return of the purchase money, and the second a promise on the part of the defendant to pay the plaintiff an additional fifty cents on each share upon such rescission; that the first element was not affected by the statute of frauds, while the second element was avoided by its provisions. Upon this theory plaintiff was awarded judgment for the purchase money and interest. This conclusion is assailed by counsel for both parties, and we are unable to see how it can be sustained, either upon reason or authority.

If the agreement to sell and the promise to repurchase are parts of the same transaction there is but one entire contract, for which the consideration was paid and under which the property was delivered, and consequently the statute of frauds has no application. The agreement to take back the stock expressly provided for the payment of $1 per share. There was no stipulation for rescission upon any other terms. It is difficult to see how this part of the contract can be treated as divisible and a repurchase compelled upon repayment of the purchase price. This would be to make a new contract for the parties, which neither party has ever assented to and which both parties repudiate. If there is a right of rescission on the part of the plaintiff it must be enforced in accordance with the terms of the contract as established by the evidence.

The jury found that the defendant agreed, as a condition to the sale of the stock to the plaintiff, that he would purchase back the stock at $1 per share, and that the repurchase would be made within one year from the date of sale, and that the plaintiff offered back the stock to the defendant at $1 per share within the year. The evidence is sufficient to support all these findings, and we conclude, therefore, that this was an entire contract for the sale of the stock, the consideration

for which was fully paid by the plaintiff to the defendant, he promising at the time to take the same back within a year if the plaintiff so desired and to pay her therefor $1 per share. The promise to take back the stock by the plaintiff is referred to in the complaint as an agreement to repurchase, as it is also in the second answer of the special verdict.   The terms were obviously so used as synonymous, as all the testimony on behalf of the plaintiff was that the defendant promised to take back the shares at the increased price within or at the time stated.   The plaintiff executed the contract on her part, tendered back the stock before the expiration of the year, and demanded the price agreed to be paid therefor.   The agreement to purchase the stock by the plaintiff upon the consideration stated, and the promise to take back the stock at an advanced price, being parts of an original and entire contract, constituted a conditional sale, and the delivery of the shares and the payment of the purchase price satisfied the statute of frauds, and the plaintiff is entitled to recover the amount agreed to be paid by the defendant upon a return of the stock.

The legal principle underlying the foregoing proposition is fully supported by the adjudicated cases: *Williams v. Burgess,* 10 A. & E. 499; *Lumsden v. Davies,* 11 Ont. App. 585; *White v. Knapp,* 47 Barb. 549; *Wooster v. Sage,* 67 N. Y. 67; *Fitzpatrick v. Woodruff,* 96 N. Y. 561; *Hilliard v. Weeks,* 173 Mass. 304, 53 N. E. 818; *Henderson v. Touchstone,* 22 Ga. 1; *Fay v. Wheeler,* 44 Vt. 292.

The agreement in all the cases cited, except the two first, was that the seller would take back or repurchase the thing sold at the original purchase price, in some instances with interest; but a stipulation for an advanced price would not affect the principle involved, but might be considered as proof tending to establish an independent contract void under the statute.   An application of the doctrine is well illustrated in the English cases cited.   In *Williams v. Burgess, supra,*

plaintiff sold a mare to the defendant for £20 with the understanding that, if she should prove to be in foal, he might have her back on paying £12. The mare was delivered to the defendant, and afterwards, when she proved to be in foal, the plaintiff tendered £12, but the defendant refused to return her and set up the statute of frauds as a bar to recovery on the agreement. The court held that this stipulation was not an independent agreement, but was part of the original contract, which was a qualified sale, which was taken out of the statute by the acceptance of the thing sold. *Lumsden v. Davies, supra,* follows this decision, and applies the rule to a sale of tea by the defendant to the plaintiff, upon a verbal agreement that he would take back, at an advance of ten cents a pound, such part thereof as the latter should have in stock at a certain date. The court held that there was but one entire conditional contract, not one contract to sell the tea to the plaintiff and another to buy it back; and therefore the delivery of the tea by the defendant satisfied the statute of frauds and plaintiff was entitled to recover for the defendant's refusal to take back the unsold tea. In *Wooster v. Sage, supra,* plaintiff purchased of defendant certain railroad bonds, with the option of returning the same if he became sick of them, in which case defendant agreed to repay the purchase money. The offer to return the bonds was not made until three years after the sale. It was held that the agreement to take back the stock was not void under the statute, and that the plaintiff was entitled to recover the purchase money with interest. In *Fitzpatrick v. Woodruff, supra,* defendant sold plaintiff certain bonds, and promised that if the latter became dissatisfied he would, on thirty days' notice, take them back and return the money paid for them with interest. In an action to recover the amount it was held that the agreement was not within the statute of frauds and the plaintiff was entitled to recover. In *Fay v. Wheeler, supra,* defendant sold plaintiff certain shares of stock and agreed to take the

same back and repay the plaintiff the purchase price on request. It was held that the contract for repayment was not within the operation of the statute of frauds though not in writing. The following language in the opinion is applicable to the facts here presented:

"The promise and undertaking sought to be enforced was a part of the plaintiff's purchase by the original contract, and so material a part that the purchase would not have been made without it. The original contract was taken from the operation of the statute by a part performance by both parties, by the delivery of the stock by the defendant, and by the payment of the money by the plaintiff."

Browne on Statute of Frauds (sec. 293) says: "A stipulation that the subject of the sale may be returned in a certain event is not to be regarded as a contract for resale, so as to be affected by the statute," and he there makes reference to *Williams v. Burgess,* above referred to. He says in sec. 293*a:*

"But it may be necessary to distinguish between such a case as this, where the stipulation to return is annexed to the original sale by way of condition, and the case of a stipulation to resell at a future time for the same or a different price, although made contemporaneously with the original sale."

He cites no decision which recognizes the distinction, where the stipulation was made by the parties to the original contract, and defendant's counsel has referred to none, although insisting that the stipulation in the present contract is for resale and not for rescission. The intention of the parties to a contract must be determined by the language employed as generally understood and not by a technical definition of words in common use in ordinary transactions. The use of the word "repurchase," in defining the stipulation, sufficiently expresses the understanding of the parties, as testified to by the plaintiff, that she bought the stock relying upon the promise of the defendant that he would take it back

within a year, if she so desired, at $1 per share. The general rule stated by Mr. Browne is here applicable, and the distinction which he seeks to make has no bearing in this case.

The plaintiff, upon the evidence in this record and upon the authorities cited, is entitled to recover the price stipulated upon a return of the stock as part of the original contract, with interest from the date of defendant's refusal to fulfil his promise in that regard.

*By the Court.*—Judgment reversed on plaintiff's appeal, with directions to enter judgment in accordance with this opinion; the defendant to take nothing on his appeal.