PAULSON and another, Receivers, Appellants, vs. BOYD, imp.,
Respondent.

*November 27—December 15, 1908.*

*Evidence: Written instruments: Contemporaneous verbal agreements:
Admissibility: Bills and notes: Defenses:* Bona fide *purchasers.*

1. Under the evidence, stated in the opinion, it is *held* that an
   agreement existed between the defendant and the payee of the
   note in suit, whereby the note was not intended and agreed
   to be a present binding agreement, but was delivered upon con-
   dition that if defendant paid the interest for eighteen months
   the payee should twice renew the note within that period, and
   if at the end of that period the defendant did not wish to pur-
   chase certain mining stock the prior agreement to purchase
   was to be terminated at·defendant's election and the note can-
   celed.
2. Under the elements of such agreement the delivered note did not
   become a completed contract *in præsenti,* and the oral agree-
   ments relative to its status are *held* not to be contradictions of
   the note itself.
3. A newly incorporated bank obtained the assets of a private bank,
   including the note of defendant on which the instant action
   was brought, pursuant to a resolution of the stockholders in-
   structing the directors to assume the liabilities of the private
   bank in consideration of the transfer of such assets, defendant's
   note being subject· to an oral agreement whereby it never be-
   came a completed contract *in præsenti. Held,* that defendant
   could assert such incompleteness as a defense to the note in
   the hands of the new bank.
       TIMLIN, KERWIN, and MARSHALL, JJ., dissent.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

This is an action upon a promissory note by the receivers of the Security Savings Bank, incorporated, against the maker· of the note and the former owner of the note as indorser. *L. T. Boyd* is the maker of the note and J. S. Ellis is the payee and indorser. It appears from the evidence of *Boyd* and Ellis that the note was given to Ellis by *Boyd* as · a part of a transaction concerning the sale of some mining stock. *Boyd* was to give his note to Ellis for $2,500, the purchase price of the stock. The note, dated October 17, 1902, was for six months, and was to be renewed twice for the same length of time. The testimony of *Boyd* as to the terms of the parol agreement is admitted by Ellis to be correct; and the agreement, in effect, is embodied in *Boyd's* evidence, set out in the record as follows:

"Shortly prior to the date of the first note he persuaded me as a good friend of his to go into this deal with him and take some of his mining stock. I told him then that I had no money, and that I was in debt and couldn't afford to take the chance. He said he wouldn't urge me to do this if he didn't know all about it. I stated that I didn't have any money to buy it with, and he said, 'That doesn't make any difference,' and he said, 'I will carry it with the bank. I will carry it eighteen months if you will pay the interest.' Then I said, 'Suppose at the end of eighteen months I can't pay it?' He said, 'Then I will take it off your· hands; but I am sure that you will have realized enough on it to pay it and make a good profit.' I said, 'I don't see any reason why you should do that for me;' and he said, 'I know you have been up against it pretty hard, and I would like to see you make some money,' and I said, 'That is very friendly of you, and I will accept the offer,' and in that case I took the stock conditionally, and signed the note which he was to renew twice, and at the expiration of the eighteen months, if I didn't want the stock, he would take it off my hands."

There was no actual delivery of the certificates of stock by Ellis to *Boyd.* At the time of this agreement Ellis conducted a private banking business under the name "Security

Savings Bank." Pursuant to the provisions of ch. 234, Laws of 1903, the Security Savings Bank was incorporated for the purpose of succeeding to the business and assets of the private bank of the same name previously conducted and managed by J. S. Ellis. The new bank was incorporated August 21, 1903, the incorporators and stockholders being Ellis and his relatives. J. S. Ellis, his brother, E. H. Ellis, and his sister, Mrs. Loranger, each took a quarter of the entire capital stock. Mrs. Kennedy, a sister of J. S. Ellis, took the remaining quarter, with the exception of one share taken by her son Ellis. At the stockholders' meeting which succeeded the meeting of the incorporators the stockholders were elected directors and by-laws were adopted. The record of this meeting shows the following:

"On motion it was ordered that the board of directors be and are directed to assume the liabilities of the private bank heretofore known as the Security Savings Bank of Ashland, Wisconsin, in consideration of the transfer of the assets of said bank to their corporation."

At the directors' meeting J. S. Ellis was elected president, E. H. Ellis, his brother, vice-president, and Ellis Kennedy, a nephew and former employee of the president, was elected cashier. Under the agreement between *Boyd* and Ellis three notes were given by *Boyd* to Ellis and deposited by Ellis at the bank. All were payable to the order of Ellis. Two of them were made before the incorporation of the bank, and one, the note in suit, thereafter. In each instance *Boyd* and Ellis conducted these transactions. The note in suit was received by Ellis as president and turned over to the cashier with instructions. The mining stock was always in the possession of Ellis and the transfer of the stock on the books of the corporation was not made until after the execution of the last note. The certificate of stock then made out was sent to Ellis and held by him. *Boyd* offered to transfer any interest in the shares of mining stock to which the agreement between him and Ellis referred,

and renewed this offer at the trial.    Plaintiffs refused to accept his offer of a written assignment.    Both parties moved for the direction of a verdict.    The court granted the motion of the defendant, and judgment was entered in accord with the verdict so ordered.    This is an appeal from the judgment.

For the appellant there were briefs by *Sanborn, Lamoreux & Pray* and *H. B. Walmsley,* and oral argument by *Mr. Walmsley.*    They contended, *inter alia,* that the corporation was not charged with knowledge possessed by its officer where he is committing an independent fraudulent act on his own account, and this applies in the case of a president and director like the defendant Ellis.    *Brookhouse v. Union P. Co.* 73 N. H. 368, 6 Am. & Eng. Ann. Cas. 675; *Allen v. South Boston R. Co.* 150 Mass. 200, 22 N. E. 917; *Indian Head Nat. Bank v. Clark,* 166 Mass. 27, 43 N. E. 912; *Produce Exch. T. Co. v. Bieberbach,* 176 Mass. 577, 588, 58 N. E. 162; *Camden S. D. & T. Co. v. Lord,* 67 N. J. Eq. 489, 58 Atl. 607; *Davis v. Boone Co. D. Bank* (Ky.) 80 S. W. 161; *Central Bank v. Thayer,* 184 Mo. 61, 82 S. W. 142; *Southern Comm. Sav. Bank v. Slattery's Adm'r,* 166 Mo. 620, 66 S. W. 1066; *Mead v. Pettigrew,* 11 S. Dak. 629, 78 N. W. 945; *First Nat. Bank v. Briggs's Assignees,* 70 Vt. 594, 41 Atl. 580; *Graham v. Orange Co. Nat. Bank,* 59 N. J. Law, 225, 35 Atl. 1053; *Nat. Bank v. Feeney,* 9 S. Dak. 550, 70 N. W. 874; *People's Sav. Bank v. Hine,* 131 Mich. 181, 91 N. W. 130; *Gunster v. Scranton I., H. & P. Co.* 181 Pa. St. 327, 37 Atl. 550; *Frenkel v. Hudson,* 82 Ala. 158; *American S. Co. v. Pauly,* 170 U. S. 133; *Clark v. Marshall,* 62 N. H. 498, 500; *Bank of Overton v. Thompson,* 118 Fed. 798; *First Nat. Bank v. Bevin,* 72 Conn. 666, 45 Atl. 954, 955; *First Nat. Bank v. Tompkins,* 57 Fed. 20; *Winchester v. B. & S. R. Co.* 4 Md. 231; *Johnston v. Shortridge,* 93 Mo. 227, 6 S. W. 64; *Wyeth v. Renz-Bowles Co.* (Ky.) 66 S. W. 825; *Corcoran v. Snow C. Co.*

151 Mass. 74, 23 N. E. 727; *Hatch v. Ferguson,* 66 Fed. 668; *Levy & C. M. Co. v. Kauffman,* 114 Fed. 170; *Seixas v. Citizens' Bank,* 38 La. Ann. 424; *Graham v. Orange Co. Nat. Bank,* 59 N. J. Law, 225; *Lamson v. Beard,* 94 Fed. 30; *Knobelock v. Germania Sav. Bank,* 50 S. C. 259, 27 S. E. 962; *Richardson v. Watson,* 51 La. Ann. 1390, 26 South. 422; *Victor G. & S. M. Co. v. Nat. Bank,* 15 Utah, 391, 49 Pac. 826; *Tate v. Security T. Co.* 63 N. J. Eq. 559, 52 Atl. 313; *Seaverns v. Presbyterian Hospital,* 173 Ill. 414, 50 N. E. 1079; *Terrell v. Branch Bank,* 12 Ala. 502; *Lyne v. Bank of Ky.* 5 J. J. Marsh. 545; *Farrel Foundry v. Dart,* 26 Conn. 376; *La Farge F. Ins. Co. v. Bell,* 22 Barb. 54. Where the bank acts entirely through another or others in the transaction, the knowledge of the offender is not imputable to the bank. *Nat. Bank v. Feeney,* 9 S. Dak. 550, 70 N. W. 874, 876. The director's knowledge is not imputable to the bank where he turns the note over to it through its cashier and does not himself act as a director upon the discount. *English-Am. L. & T. Co. v. Hiers,* 112 Ga. 823, 38 S. E. 103; *Powles v. Page,* 10 Jur. 526; *Lucas v. Bank of Darien,* 2 Stew. 280; *Farmers & Citizens Bank v. Payne,* 25 Conn. 444; *Louisiana State Bank v. Senecal,* 13 La. 525; *Shaw v. Clark,* 49 Mich. 384, 13 N. W. 786; *Johnston v. Shortridge,* 93 Mo. 227, 6 S. W. 64; *Buffalo Co. Nat. Bank v. Sharpe,* 40 Neb. 123, 58 N. W. 734; *First Nat. Bank v. Christopher,* 40 N. J. Law, 435; *Fulton Bank v. N. Y. & S. C. Co.* 4 Paige, 127; *Westfield Bank v. Cornen,* 37 N. Y. 320; *Commercial Bank v. Burgwyn,* 110 N. C. 267, 14 S. E. 623; *Merchants' Nat. Bank v. Lovitt,* 114 Mo. 519, 21 S. W. 825; *Loomis v. Eagle Bank,* 10 Ohio St. 327; *Custer v. Tompkins Co. Bank,* 9 Pa. St. 27; *New York v. Tenth Nat. Bank,* 111 N. Y. 446, 18 N. E. 618.

For the respondent there were briefs by *Winkler, Flanders, Bottum & Fawsett,* and separate briefs signed also by

*James G. Flanders,* and oral argument by *Mr. Flanders.* They contended, *inter alia,* that the bank was charged with notice of the facts within the knowledge of Ellis as its director and president at the time of its incorporation and the taking over of the assets of the old bank. *Bank of U. S. v. Davis,* 2 Hill (N. Y.) 451, 461, 463; *Wis. Cent. R. Co. v. Wis. R. L. Co.* 71 Wis. 94, 107; *In re Plankinton Bank,* 87 Wis. 378, 383; *Nat. Bank v. Munger,* 95 Fed. 87, 92; *Holden v. New York & E. Bank,* 72 N. Y. 286; *Union Bank v. Campbell,* 4 Humph. 394; *Nat. S. Bank v. Cushman,* 121 Mass. 490; *Waynesville Nat. Bank v. Irons,* 8 Fed. 1; *Loring v. Brodie,* 134 Mass. 453, 457.

SIEBECKER, J.    At the trial the defendant *Boyd* relied upon an agreement between him and Ellis, the payee in the note given by the defendant. The transaction between the defendant and Ellis for the purchase of mining stock is admitted by Ellis to have constituted the agreement for which the notes were given. The primary question is: What was the parol agreement between these parties? The evidence of it is not voluminous or contradictory, and is, in effect, that Ellis undertook to assist *Boyd* in securing the advantages of an interest in a mine, if it should prove a profitable enterprise at the expiration of eighteen months. To accomplish this *Boyd* contracted for the purchase of some mining stock from Ellis at an agreed price of $2,500 upon the following arrangement: Since *Boyd* had no available means to make such a purchase, Ellis made him an offer for such purchase, under which *Boyd* was to give him a note for the amount, which Ellis was to carry and renew for eighteen months. If the stock had not then realized enough to pay the purchase price and *Boyd* did not then want the stock, then Ellis was to take it off his hands and cancel the note. The stock realized nothing, and *Boyd* insists that, under the parol agreement with Ellis at and before the delivery to Ellis

of the first note, the notes never went into effect as completed contracts. He contends that he was to have the right at the expiration of eighteen months to elect whether he wanted the stock. We are of the opinion that the facts sustain this claim and show such an agreement between the parties.

An examination of the evidence, in view of the relations of the parties and the considerations which induced him to make and deliver the note, leads us to the conclusion that it was not intended and agreed by them that the note should be a present binding agreement, but that it was delivered to Ellis upon the condition that if *Boyd* paid interest on the sum for eighteen months Ellis was to renew the notes as agreed, and if at the expiration of that time *Boyd* did not want the stock the agreement to purchase was to be terminated at *Boyd's* election and the note canceled. The significance of the terms of the transaction, as shown by the evidence of the situation, is that *Boyd* had the right at the expiration of eighteen months to elect whether he would accept a transfer of the stock at the price fixed and evidenced by the note. The elements of the agreement constitute an arrangement under which the note delivered to Ellis did not become a completed contract *in præsenti*, but was to take effect as a completed contract only in the event that *Boyd*, under the agreement, elected to take a transfer of the stock within the time agreed on. Such oral agreements are not contradictory of the written instrument. This rule was declared and fully discussed in the recent case in this court of *Hodge v. Smith*, 130 Wis. 326, 110 N. W. 192, where it was held:

"It is familiar law, notwithstanding some conflict in the authorities, that a person may manually deliver an instrument, though it be in the form of commercial paper, to another, on its face containing a binding obligation *in præsenti* of such person to such other, with a contemporaneous verbal agreement that it shall not take effect until the happening of some specified event, and that the paper, as be-

tween the parties, will have no validity as a binding contract till the condition shall have been satisfied; and that proof of such condition does not violate the rule that a written instrument cannot be varied by a contemporaneous parol agreement; that such evidence only goes to show that the instrument never had vitality as a contract"—citing cases.

It is there also held that this principle is recognized in the Negotiable Instrument Law (sec. 1675—16, Stats.: Supp. 1906) by providing that:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, . . . delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument."

In the case of *Burke v. Dulaney,* 153 U. S. 228, 14 Sup. Ct. 816, the circumstances of the transaction are in their main features very like the instant case, and it was held by the court that a note covering the price for the sale of property by the payee to the maker, which had been delivered under an oral agreement between the parties to the effect that the note should represent the price if the maker should determine to retain the interest in a mine after having worked and inspected it, under such circumstances there was not such a delivery of the note as to make it unconditionally binding upon the obligor according to its terms, but it was delivered to become absolute if the maker elected to take the property under the terms of the oral agreement. Other cases on the subject are *State ex rel. Jones v. Chamber of Comm.* 121 Wis. 110, 98 N. W. 930; *Ware v. Allen,* 128 U. S. 590, 9 Sup. Ct. 174; *Wilson v. Powers,* 131 Mass. 539.

The question arises: Can defendant avail himself of this agreement between himself and Mr. Ellis as against the plaintiffs, the receivers of the Security Savings Bank? It is without dispute that the Security Savings Bank became in-

corporated in August, 1903, and that it obtained this note and
other securities from the private bank which Mr. Ellis had
conducted prior to its incorporation. We are of opinion
that the evidence is clearly to the effect that the newly incor-
porated bank obtained the assets, including this note, pur-
suant to a resolution of the stockholders directing the direct-
ors to assume the liabilities of the private bank in considera-
tion of a transfer of the assets of the private bank to the
new bank. There is no dispute but that the note obtained
by the new bank by such transfer was one given in renewal
of the former note given by *Boyd* to Ellis under the parol
agreement for the purchase of the mining stock, and that
when this second note matured the bank took the note sued
on in renewal of it. There is no evidence tending to show
that at the time of the renewal the original agreement was
in any way changed or modified. The new notes were taken
in place of the first one and represent the original obligation.
*First Nat. Bank v. Case,* 63 Wis. 504, 22 N. W. 833; *Gal-
lagher v. Ruffing,* 118 Wis. 284, 95 N. W. 117.

Can defendant assert this defense to the note in the hands
of the new bank? This must be answered in the affirma-
tive in view of the circumstances of the transfer of the assets
from the private to the new bank. The condition of the
transfer is that the new bank "assume the liabilities of the
private bank . . . in consideration of the transfer" of its
assets to the new bank. As stated, there is no question but
that the transfer was in fact so made. This transfer im-
ports that the new bank received the assets charged with the
conditions to which they were subject in the hands of the
private bank, and constitutes an express assumption of all
defenses to which they were subject in the hands of the
former owner. The note having come into the hands of Mr.
Ellis as manager of the private bank, subject to the condi-
tions of the parol agreement with *Mr. Boyd,* it follows that
the new bank holds it subject to the defense that its delivery

was conditional, "or for a special purpose only, and not for the purpose of transferring the property in the instrument." *Hodge v. Smith,* 130 Wis. 326, 110 N. W. 192.

This result renders all other questions discussed by counsel immaterial, and calls for affirmance of the judgment.

*By the Court.*—Judgment affirmed.

TIMLIN, J. (*dissenting*). With that part of the decision holding that the plaintiffs took the note in question subject to all defenses available by the maker against Ellis and which would go to defeat the instrument I am in accord. But I consider it a serious menace to commercial paper and in breach of the rule of law, hitherto well upheld in this state, which forbids the reception of parol evidence to vary or contradict a written contract, to admit for the purpose of defeating the note the defense here pleaded and attempted to be proved by the testimony of the defendant *Boyd.* There is no doubt about the rule of law which should be applied. It is found in the prior decisions of this court and in sec. 1675—16, Stats. (Supp. 1906):

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made by or under the authority of the party making, drawing, accepting, or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument. . . . And, where the instrument is no longer in the possession of the party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved." Sec. 1675—16, *supra; Hodge v. Smith,* 130 Wis. 326, 110 N. W. 192, and cases cited; *Thomas v. Watkins,* 16 Wis. 549; *McLean v. Nugent,* 33 Wis. 353.

It must be borne in mind that this action is by an indorsee of a promissory note negotiable in form and against the in-

dorser, Ellis, and the maker, *Boyd*. The answer of the defendant *Boyd* avers:

"Thereupon said Ellis offered to take a note for said sum of $2,500 and renew it twice for a period each time of six months, and that, if said defendant *Boyd* was not ready or inclined to pay for said stock, he, the said defendant Ellis, would take the stock and return and cancel the defendant *Boyd's* note, and under these circumstances, and pursuant to this agreement, said defendant *Boyd* did sign and put into the possession of said defendant Ellis a writing in the form of a promissory note for $2,500, running six months from October 17, 1902, and at the expiration of said six months the same was surrendered and a new note for another period of six months delivered to said defendant Ellis, and at the end of said second period a new one for the same amount and running six months was put in the possession of said Ellis, and that the last one so put in the possession of said Ellis is the instrument for the payment of which this action is brought."

The oral testimony of the defendant *Boyd* quoted in the majority opinion was given in answer to the following question: "*Q.* Will you state the facts and circumstances connected with the execution of that note?" To this he answered, showing that, in urging *Boyd* to take some of his mining stock, Ellis said: "I can carry it with the bank. I will carry it eighteen months if you will pay the interest." *Boyd* answered: "Suppose at the end of the eighteen months I can't pay it?" Ellis: "Then I will take it off your hands, but I am sure that you will have realized enough on it to pay it and make a good profit." *Boyd:* "I don't see any reason why you should do that for me." Ellis: "I know you have been up against it pretty hard, and I would like to see you make some money." *Boyd:* "That is very friendly of you, and I will accept the offer."

In the foregoing quoted testimony it is not quite clear when the word "it" represents the mining stock and when the note. But, taking the further testimony of the same witness, it is apparent that in the expression, "I can carry it

with the bank. I will carry it eighteen months if you will pay the interest," "it" refers to the note. Changing to the narrative form, the witness testified: "And in that case I took the stock conditionally, and signed the note which he was to renew twice, and at the expiration of the eighteen months if I didn't want the stock he would take it off my hands." He further testified:

"The agreement was that they kept the shares of stock as collateral to the note. They were not in my physical possession. At the expiration of the first note I paid the interest and renewed the note, and at the expiration of the second note I paid the interest and gave a new note. I only know that . . . Ellis would take care of it [the note] at the bank. He told me he would take care of it at his bank. Q. Did you understand from J. S. Ellis, when the first note was given, that he was to put it in the bank? A. Yes, sir. Q. Did you understand, when the second note was given, that it was to be carried by the bank? A. I understood that the whole loan was to be carried by the bank."

Again on another subject:

"Q. Did you give the third note—that one here involved —before or after you received the letter that your counsel has? A. After I received that letter. . . . My recollection is that I held the note until I heard from him."

This letter is in evidence, and is as follows:

"FRIEND TIM: Your letter came this a. m. and under my agreement with you I must carry this paper for six months yet—if you do not want the stock at that time I will accept it in payment of the note. I think though that you will want the stock. Yours,                    J. S. ELLIS."

After thus setting forth the pleading and evidence it seems superfluous to say that not only was the presumption of a valid and intentional delivery created by sec. 1675—16, supra, not overcome, but there was affirmative proof of the delivery of the note as a note and to be in force and effect as a note. Could defendant Boyd avoid the force of his own undisputed testimony that he withheld delivery of the last

renewal note, the note in suit, until he received the letter
above quoted, and then upon receipt of this letter delivered
the note? If he could not, then the case is ruled by *Perry
v. Bigelow,* 128 Mass. 129; *Racine Co. Bank v. Keep,* 13
Wis. 209; and *Hubbard v. Marshall,* 50 Wis. 322, 6 N. W.
497.

The majority of the court seem to have overlooked the
force and significance of this undisputed evidence regard-
ing the delivery of the note in suit. But, examining the
case without this letter, there was a delivery of the note.
The agreement to pay interest and the payment of interest,
the agreement to renew and the renewals pursuant to that
agreement, are consistent only with absolute delivery. The
agreement that the payee should carry the note at the bank
even where the payee owned the carrying bank means that
the note was considered by the parties to have been deliv-
ered. All of these are inconsistent with nondelivery or with
conditional delivery. Again, in the light of the additional
testimony above quoted interpreted in harmony with the
pleading, the whole testimony of *Boyd* is plainly to the
effect that it was orally agreed that he should give his note
for $2,500 for certain shares of mining stock to be held by
the seller as collateral security to that note, that the note was
to run six months and to be twice renewed, *Boyd* to pay in-
terest thereon and to have the right to avail himself of any
rise in the price of the stock in the meantime, but if he did
not during or at the end of the eighteen months avail him-
self of this right to take the shares, Ellis was to *take or keep
the stock and cancel or discharge the note.* There is here no
evidence of nondelivery or of conditional delivery, but rather
evidence showing delivery coupled with an oral agreement
that the note should be discharged or paid in a certain man-
ner differing from that specified in the instrument itself.
*Burke v. Dulaney,* 153 U. S. 228, 14 Sup. Ct. 816; *S. C.* in
court below, *Dulaney v. Burke,* 2 Idaho, 719, 23 Pac. 915.

I need not here discuss at length the facts in the case last cited. The difference between that case and the instant case is obvious, and is emphasized in the opinion by Mr. Justice HARLAN. I have no doubt the oral contract between *Boyd* and Ellis collateral to this note was founded upon a valuable consideration and enforceable by *Boyd* against Ellis. It was a sale of the shares to *Boyd* with an agreement to repurchase at the end of the eighteen months at the same price, at the option of *Boyd*. *Vohland v. Gelhaar,* 136 Wis. 75, 116 N. W. 869. But that is not the question here. This right of action of *Boyd* against Ellis did not accrue until the last renewal note became due and *Boyd* exercised his option, which was long after the note was indorsed to the bank of which the plaintiffs are receivers. Sec. 2606, Stats. (1898), and cases in note, and subd. 6, sec. 4258, Id.

KERWIN, J. I concur in the foregoing dissenting opinion of Mr. Justice TIMLIN.

MARSHALL, J. (*dissenting*). I concur in the opinion of Mr. Justice TIMLIN. It seems to me that my Brother TIMLIN has shown with a certainty equivalent to a mathematical demonstration that the note in question was intended to take effect as soon as parted with by the payor. The cotemporaneous agreement was with reference to a contingency which might enable the payor to discharge his obligation otherwise than according to its tenor. It seems quite manifest that my brethren of the majority have mistaken a condition subsequent created by parol at the time of delivery of the paper, which all agree could not be used to defeat it, for a condition subsequent contemplating necessity for the happening of a specific circumstance to give the paper effect as an obligation.

I dissent from the decision of the court upon another ground which I will mention without taking time to discuss

it. The assumption of liability by the new bank, in my judgment, had no reference to secret defenses to commercial paper due in the future, but to liabilities of the bank as they are ordinarily understood and commonly carried upon the books; in general, consisting of indebtedness to depositors.

There are other questions discussed upon the appeal not mentioned in the court's opinion, but I take it that if it were not for the conclusion reached upon the two points I have mentioned there would have been an agreement resulting in a reversal of the judgment. In my opinion it should be reversed and judgment rendered in favor of the plaintiffs.