UNION BANK OF MILWAUKEE, Respondent, vs. COMMERCIAL SECURITIES COMPANY and another, imp., Appellants.

*March 18—June 13, 1916.*

*Bills and notes: Indorsers: Parol evidence as to liability: Discharge by use of collaterals for other purposes: Estoppel: Promise of indorsers to pay: Consideration: Reliance thereon: Special verdict: Omitted facts: Appeal: Harmless errors.*

1. In the absence of fraud, parol evidence as to what occurred between the parties before or at the time of the giving of promissory notes is not admissible to show that those whose names appear thereon as indorsers were in fact to be liable thereon as makers.
2. One who places his name on the back of a note before delivery to give credit thereto is not liable as a maker, but only as an indorser, even though he was not a party to the note prior to his so writing his name.
3. If a person acts in his business relations with another under such circumstances as to charge him with knowledge that such other may probably rely thereon to his damage in case of such person's conduct thereafter being inconsistent with his former actions, and such other does in good faith so rely, such person cannot so change his position to such other's prejudice.
4. In an action by a bank against the indorsers of promissory notes for which certain collaterals held by the bank for other notes of the same maker were secondarily security, the jury having found upon sufficient evidence that at and prior to the time of waiving protest on the notes in suit defendants promised to pay them, that after maturity of the notes in suit defendants advised and aided the transfer by the bank of said collaterals, with the notes primarily secured thereby, to another person, and that with full knowledge of such transfer they again promised to pay the notes in suit; and it being apparent from the evidence that the bank in good faith relied on such promises in parting with the collateral and in dealing with the maker of the notes, defendants are estopped from asserting they were relieved from liability as indorsers on the ground that the bank had applied the collaterals to other purposes.
5. It is not material in such case that there was no consideration moving to the indorsers for their promise to pay the notes, if such promise was made to induce the plaintiff bank to look to them and not to the collaterals or other means it might have for

satisfaction of the debt in whole or in part, and the bank relied and acted thereon.

6. No question having been submitted to the jury as to plaintiff's reliance upon the defendants' promises, and no request made for such submission, that question must, under sec. 2858m, Stats., be deemed to have been determined by the trial court in conformity with its judgment.

7. Errors committed in the course of the trial are not sufficient ground for reversing a judgment unless it pretty clearly appears that the result might probably have been more favorable to the party complaining if they had not occurred; and, in the light of the presumption that the trial was before a competent judge and an impartial and intelligent jury, there is generally little use in bringing to the attention of this court many detail matters in respect to the admission of evidence, where such matters must be considered in connection with a mass of evidence and many circumstances.

8. The jury found that the agreement pursuant to which the said collaterals and about $20,000 of notes, given by the maker of the notes in suit and primarily secured by said collaterals, were transferred to one N., who was interested in protecting the credit of said maker, was made by N. in consideration of a promise by the bank to discount his notes, or those of companies controlled by him, to the amount of $60,000; also that such loan of $60,000 was not to become effective until approved by the directors of the bank. It appeared that such approval was to depend upon the directors being satisfied of the truth of representations made by N., which investigation proved to be untrue, but that the transaction as to the payment or purchase by N. of the $20,000 of notes and the transfer to him of the collaterals had been, in the meantime, completed and was not thereafter rescinded. *Held*, that the refusal of the bank to make the loan to N. did not affect the liability of the defendants upon their promise to pay the notes in suit.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

Action to recover on seven promissory notes, aggregating $6,000, and interest. The complaint contained appropriate allegations to charge defendants *Commercial Securities Company* and *C. R. Gether* as indorsers. The notes were dated May 1, 1913, payable four months after date, signed by the defendant Heller Piano Company, payable to the order of the

defendant *Securities Company* at the plaintiff bank, indorsed by such company and defendant *Gether,* and, for value, delivered to such bank.    They were alike in form, and contained a provision for pledging collateral security for their payment in this form: "Having deposited with said bank as collateral security, for payment of this or any other direct or indirect liability or liabilities of us to said bank, due or to become due, or that may be hereafter contracted or existing, howsoever acquired by said bank, the following property," describing conditional sale contracts covering pianos, and followed by appropriate provisions for realizing on the collateral as necessary and application of the proceeds.

Defendants *Gether* and the *Securities Company* answered, separately, admitting the making and delivery of the notes as stated in the complaint, that they had not paid them, that the notes were possessed by plaintiff, and that they, in writing, waived protest for nonpayment and notice of protest, and pleading as defenses, that the notes were delivered to the plaintiff upon conditions which were not performed, and that the maker delivered to it collateral security for payment of the notes, and that it had, in due time, in its hands and under its control the means of complete or partial satisfaction of the indebtedness of the piano company upon the notes; but applied the same to other purposes than such payment.

The court permitted evidence claimed by plaintiff to show, or tend to show, that the loans evidenced by the notes were made to *Gether* and the *Securities Company,* and that they were primarily liable therefor; also that *Gether,* for himself and such company, when the waiver of protest was made, promised to pay the notes.    There was also evidence to this effect: In September, 1913, the piano company was indebted to the bank to the amount of $20,000, and interest, in addition to the indebtedness on the notes in suit, and had collateral security therefor which was, secondarily, security for payment of the latter, and that the former indebtedness, with the

collateral thereto, was taken out of the bank by H. P. Nelson, he giving his check to the bank for $20,240.90. The check was made payable to the piano company. It was duly indorsed to the bank and thereupon the piano company notes, aggregating the amount of the check, and the collateral to such notes, were produced and turned over to Nelson. The check was paid. Nelson was interested in protecting the credit of the piano company and keeping it in business. There was a dispute in the evidence as to whether the transaction involved a purchase of the notes with the collateral or a payment of the notes. There was evidence tending to prove that *Gether,* on behalf of himself and the *Securities Company,* participated in such transaction and consented thereto, promising, during the negotiations, that they would take care of the notes in suit. There was further evidence to the effect that, as part of the transaction aforesaid, plaintiff agreed to discount or place notes of H. P. Nelson and companies controlled by him to the amount of $60,000, but upon condition that the matter should be approved by the board of directors of the bank after investigation as to the truth of representations made by him which were material to the value of the proposed paper; that upon such investigation being made, the representations were found to be materially untrue and so the bank declined to take or handle such paper; that the taking of such paper was so far independent of the delivery of the notes and collateral for the Nelson check of $20,240.90, and that the latter part was fully closed up without waiting for action as to the former and was not thereafter rescinded.

There was further evidence to the effect that the day after the notes in suit matured there was a credit, on the books of the bank, to the piano company, at the close of business for the day, of $1,313.71. At the opening of business the credit was $826.75. That was added to during the day by items aggregating over $6,000 and debited so as to leave the balance stated. There were debit and credit charges each business

day thereafter up to the close of the account, October 4, 1913, leaving, generally, a small balance in credit at the end of each day.    There was a dispute as to whether the credit to the piano company, indicated by this account, was available for payment of the notes in suit.    It was claimed by plaintiff that it was created by drafts which were credited up subject to be charged back if not paid and that they were dishonored; that such condition existed right along; drafts being taken by the bank, credited up, and the proceeds immediately checked out, which drafts were dishonored to such extent that there really was, counting out such drafts, an overdraft account all the time.

There was evidence that September 20, 1913, the plaintiff held certain real estate which had been transferred to it by Hugo Heller, that he, on that day, authorized plaintiff to sell the same for $3,000, and apply the money in payment of certain indebtedness of the Heller Piano Company other than that on the notes in question, and that such sale and application were made.

There was further evidence bearing on the subjects covered by the special verdict other than those heretofore referred to.

The jury found, in brief, as follows:

1st.  Before the execution, indorsement, and delivery of the notes to plaintiff, it was agreed, between *Gether,* on behalf of himself and the *Securities Company,* and plaintiff, that the latter should make the loan to *Gether* and the *Securities Company.*

2d.  The notes in suit were given and indorsed to carry out said agreement.

3d.  When the waiver of protest was made, *Gether,* for himself and the *Securities Company,* agreed to pay the notes.

4th.  *Gether,* knowing of the disposition of the securities held by the bank for the indebtedness of the piano company, and, after the maturity of the notes in suit, for himself and the *Securities Company,* promised to pay the same.

5th. *Gether,* knowing that the collateral parted with by the plaintiff in the transaction with Nelson was also collateral to the indebtedness in suit, advised and aided in such transaction.

6th. The value of the collateral so parted with did not exceed $15,000.

7th. The plaintiff, in September, 1913, did not apply to other purposes collateral security applicable to the notes in suit.

8th. The notes in suit were not delivered to Hugo Heller with knowledge of plaintiff's cashier that they were not to be delivered to the bank until after the collateral therewith had been approved by H. P. Nelson.

9th. The market value of the collateral to the notes in suit was $9,063 when deposited with plaintiff.

10th. The agreement to pay the $20,240.90 which was paid to plaintiff was in consideration of an agreement by plaintiff to discount notes of H. P. Nelson and the companies controlled by him, aggregating $60,000.

11th. It was understood that the loan of $60,000 was not to be made until approved by the board of directors of the plaintiff.

The defendants, *Gether* and the *Securities Company,* requested the court to submit to the jury, among others, questions as to whether, at the time the notes in suit became due, plaintiff had in its hands the means of complete or partial satisfaction of such notes which it applied to other purposes. Such questions were not submitted except so far as covered by the finding numbered 7. Appropriate motions were made on behalf of said defendants to save for review the matters presented on this appeal, which motions were denied and judgment was rendered in favor of plaintiff for the amount claimed in the complaint, with costs.

For the appellants there was a brief by *Glicksman, Gold & Corrigan,* attorneys for *C. R. Gether,* and *J. E. Tierney,* at-

torney for *Commercial Securities Company,* and a separate brief by *Jackson B. Kemper,* of counsel; and the cause was argued orally by *Mr. Kemper* and *Mr. W. L. Gold.*

For the respondent there was a brief by *Rubin, Fawcett & Dutcher,* attorneys, and *Paul R. Newcomb,* of counsel, and oral argument by *Mr. Francis E. McGovern* and *Mr. Newcomb.*

The following opinion was filed April 11, 1916:

MARSHALL, J.    The first proposition submitted on behalf of appellants which, in an orderly treatment of the case, it seems should be considered, is that questions 1 and 2 of the special verdict should not have been submitted and the findings in respect thereto should not be deemed material, because it is not competent to vary a written contract by parol evidence of what occurred between the parties prior to or contemporaneous with its making, and the law in that respect applies to the contract relations between the payee of a note and one who places his name thereon, in form, as an indorser, no fraud being practiced in securing the indorsement.    Such proposition is ruled in appellants' favor by *Charles v. Denis,* 42 Wis. 56; *Davy v. Kelley,* 66 Wis. 452, 29 N. W. 232; *Halbach v. Trester,* 102 Wis. 530, 78 N. W. 759; *Hackley Nat. Bank v. Barry,* 139 Wis. 96, 120 N. W. 275; and other cases decided by this court, all in harmony with a very elementary principle.

In *Hackley Nat. Bank v. Barry,* speaking of such principle, the court said:

"Our books are replete with statements and applications of that rule. . . . It has been applied in many instances to preclude admission of evidence of what was said between parties to commercial paper, at the time of the making thereof, to vary its terms: as that it might be paid in bank notes . . . ; or that a party purporting to be bound as a payee or indorser should not be so bound . . . ; or that the indorser placed his name on the note with the understanding that his indorsement

should be without recourse . . . ; and many more like instances."

In *Halbach v. Trester* it was said, in effect, that the engagement which the law implies from the circumstances of a person placing his name on the back of a note, in form, as an indorser, is just as immune from danger of being varied by parol evidence as any other written contract. "There being no claim of fraud in securing the indorsement, the trial court properly rejected the testimony by which it was sought to establish the fact that defendants did not intend to bind themselves as indorsers."

No reason is perceived why the foregoing does not preclude the findings of the jury that the agreement, pursuant to which the notes in suit were given, was that respondent should loan the money, therein promised to be paid, to appellants, from affording any efficient support to the judgment. There is no finding that any fraud was practiced upon them by respondent to secure their indorsements, and no evidence which would tend to support any such finding. On the contrary, the evidence, quite strongly, affirmatively indicates that the contract, as indicated by the writing, is precisely the one appellants intended to make; but there is no need for discussing the matter so we will not extend the opinion by referring in detail to the evidence.

*Paulson v. Boyd,* 137 Wis. 241, 118 N. W. 841, and similar cases, to the effect that parol evidence is admissible to show that a note was delivered to take effect only upon some stipulated condition, and *Breitengross v. Farr,* 100 Wis. 215, 75 N. W. 893, to the effect that such evidence is competent in an action between persons liable on a note to show the contract relations between them in relation to the matter, are in harmony with the foregoing.

It is suggested that, as appellants placed their names on the back of the notes before delivery to give credit thereto, they are liable as makers, particularly *Gether,* who was not a party

to the notes prior to his so writing his name. Such is the rule in some jurisdictions, as indicated in *E. L. Welch Co. v. Gillett,* 146 Wis. 61, 130 N. W. 879; but the weight of authority is to the contrary, and the decisions of this court are in harmony therewith. *Davis v. Barron,* 13 Wis. 227; *King v. Ritchie,* 18 Wis. 554; *Frederick v. Winans,* 51 Wis. 472, 8 N. W. 301; *Blakeslee v. Hewett,* 76 Wis. 341, 44 N. W. 1105.

The defense pleaded that the·notes were delivered to respondent conditionally, and that the conditions were never fulfilled, was negatived by the jury upon ample evidence to support the finding. So we turn to the matter covered by the second defense pleaded; *i. e.* that respondent, seasonably, had in its hands and under its control the means of complete or partial satisfaction of the notes, but applied the collateral to such notes and such means of satisfaction to other purposes than their payment. Several interesting questions are discussed in the briefs of counsel relating to such second defense which are immaterial in view of the findings of the jury that, at the time appellants waived protest on the notes, and prior thereto, they promised to pay them; that with full knowledge of the delivery of the collateral to the $20,000 of notes and the disposition made of the other securities held by the bank for the indebtedness of the Heller Piano Company, and after the maturity of the notes, appellants promised to pay them; and that, with full knowledge of the relation of such collateral to the indebtedness represented by said notes, appellants advised and aided in the transfer of such collateral to the H. P. Nelson Company. There is ample evidence to support such findings.

That·there was no consideration which moved to appellants for their promise to pay the notes is not material if such promise was made to induce respondent to look to them and not to the collateral or other means respondent might have for satisfaction, in whole or in part, of the indebtedness, and respondent acted thereon, which seems, clearly, to be the case, as the jury, in effect, found.

There was evidence that when the negotiations were on for turning the collateral over to H. P. Nelson, respondent wanted the entire liabilities of the Heller Piano Company taken out of the bank; that appellants participated in the negotiations and urged respondent to deal with Nelson and the collateral without reference to the notes in suit, *Gether* saying,—"Leave the *Commercial Securities Company* and my papers alone," or words to that effect. "I will take care of them myself. All I want is time. I will pay that; that is my indebtedness"—and that, thereupon, the transaction for turning the collateral and some over $20,000 of the liabilities of the piano company to Nelson was concluded. The jury in making the findings in question must have believed that evidence. Appellants, Nelson, and the piano company were very closely related in business. It was very important to appellants and Nelson to keep such company a going concern, and the arrangement appellants promoted for taking the large amount of piano company indebtedness out of the bank was thought to be vital thereto. It was necessary to such arrangement, as evidence tends to show, which the jury must have believed in coming to the conclusions which they did, that the bank should leave the indebtedness on the notes in suit out of the transaction with Nelson, as a matter to be looked after by appellants. That was done and the business between the bank and the piano company, including the handling of the latter's bank account, was thereafter conducted without reference to the particular indebtedness. It was left out of calculation, as to the piano company, on the theory, apparently, that appellants would care therefor according to the promise which entered into the transaction of releasing the collateral to Nelson. Consistent therewith, the piano company was accommodated by being permitted to do its ordinary business with the bank, undisturbed by the circumstance of the existence of the overdue notes. It deposited drafts for collection, from day to day, as occasion required, and drew against them to meet its necessities. During this time au-

thority was given to the bank by Heller to sell some real estate it held for him and apply the proceeds on indebtedness of the piano company, other than the notes in suit. As to this particular matter, we do not overlook the form of the order as to the sale of the realty and disposition of the proceeds; but the undisputed evidence, as the court instructed the jury, is that the application of such proceeds was directed by Heller to be made upon particular indebtedness, or the understanding was that it should be so applied, and such was done. In short, from the time of the waiver of protest and assurances by appellants that they would take care of the particular indebtedness, the conduct of the bank is inconsistent with any other reasonable theory than that it relied on such assurances and, so relying, that it parted with collateral security for payment of such indebtedness and left the enforcement of the security specially pledged for such payment to be looked after by appellants and omitted to exercise any right it had to resort therefor to the piano company's bank account.

That the evidence shows that the bank relied on the assurances of appellants as stated, as the trial court viewed the matter, if the facts were as indicated in the third, fourth, and fifth findings made by the jury, is evident from the circumstances that the questions which resulted in such findings were submitted on the theory that they covered the essentials of an estoppel *in pais* against appellants efficiently putting forth the matters covered by the second defense pleaded, and no question was submitted in respect to such reliance. Counsel for appellants did not request the submission of any such question. Had one been submitted, there can be no reasonable doubt as to what the answer would have been. It would have been in favor of respondent as a natural result of the other findings and the evidence. In any event, it must be regarded as a verity that the court below decided such matter in favor of respondent under the statutory rule that all matters of fact essential to support a judgment rendered on a spe-

cial verdict, which are controverted on the evidence, if omitted from such verdict and not brought to the attention of the court by request for findings, shall be deemed determined by the court in conformity with its judgment, and consent shall be presumed that such omitted facts be determined by the court.    Sec. 2858m, Stats.

It needs no discussion to demonstrate that the situation shown by the findings above referred to creates an estoppel in favor of respondent as to all the matters covered by appellants' second defense and precludes them from efficiently making any defense to their alleged liability upon the notes, which they knew, or ought reasonably to have known, existed when they lulled respondent into the belief that they would not question such liability and so induced, or materially aided in inducing, it to take a course by which it would be greatly prejudiced if they were permitted to successfully change their attitude.

If a person acts in his business relations with another, under such circumstances as to charge him with knowledge, that such other may probably rely thereon to his damage in case of such person's conduct thereafter being inconsistent with his former actions and such other does, in good faith, so rely, such person cannot so change his position to such other's prejudice.    *State ex rel. Att'y Gen. v. N. P. R. Co.* 157 Wis. 73, 97, 147 N. W. 219.

The doctrine of estoppel is of far-reaching character. While it has been spoken of by some writers with a measure of discredit, as this court remarked in *Marling v. FitzGerald,* 138 Wis. 93, 120 N. W. 388, "It is entitled to the distinction of being one of the greatest instrumentalities to promote the ends of justice which the equity of the law affords."   Where the facts call for its application in order to prevent injustice being done, it "has the field to itself" superseding all other rules which have not fully acted upon the particular situation. It absolutely precludes, both at law and in equity, a party

"from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy." 2 Pom. Eq. Jur. (3d ed.) § 804.

We have examined all the features of the briefs of counsel for appellants respecting errors claimed in giving or failing to give instructions, in failing to submit to the jury questions requested, in the admission or rejection of evidence, and others, and it does not seem that this opinion should be extended by referring to them in detail and showing why we are persuaded that no such error in respect to any such matter was committed which probably affected the verdict of the jury as to the matters creating the estoppel upon which, it seems, the judgment is well grounded.

Under the established rule that, no matter how many errors may be committed in the course of a trial, they will not operate to disturb the judgment on appeal unless it appears, pretty clearly, that had they not occurred the result might probably have been more favorable to the party complaining, generally, there is little use in bringing to the attention of this court many detail matters in respect to the admission of evidence, where such matters must be considered in connection with a mass of evidence and many circumstances, in the light of the presumption that the trial was before a competent trial judge and an impartial and intelligent jury. Such a jury may be swayed by immaterial evidence or rather unfair conduct of counsel; but the fact in that regard must, pretty clearly, affirmatively appear from the record, or errors assigned as to such conduct, or mere irrelevant or immaterial evidence, or the rejection of evidence, else the fault, in case of there being any, must be regarded as nonprejudicial.

We may well give some special attention to the claim that judgment should have been awarded appellants because the jury found that Nelson's agreement to pay $20,240.90 to the respondent and to take indebtedness of the piano company to that amount with the collateral thereto out of the bank, was in consideration of the latter's agreement to discount notes of Nelson and his companies to the amount of $60,000, and that such discount was refused.    It is considered that,—the jury having also found that the feature of the agreement as to the $60,000 was not to be effective until approved by the board of directors of the bank, and the evidence showing that such approval was to wait upon satisfaction by such board as to representations made by Nelson affecting the character of his paper; that the feature, as to payment of the $20,240.90 to, and taking piano company indebtedness to that amount out of, the bank, was closed up without waiting for action by such board upon the $60,000 matter, and that the closed feature was not thereafter rescinded,—the court was warranted in holding that the result as to the $60,000 was immaterial to the other feature and the promise of appellants to take care of the notes in suit if the bank would deal therewith separate from the other indebtedness and surrender the security which was primarily liable therefor.

The suggestions that the evidence showed $52 to have been paid into the bank as collections on the collateral to the notes in suit after the action was commenced, and that two of the items of collateral were not produced at the trial, and that such matters should have been applied to reduce the liability of appellants, have not been overlooked.    The evidence as to the $52 and the disposition thereof is not very clear.    It rather seems that *Gether* had the benefit of it or that it was set aside for him and his cosurety.    It also seems that the two contracts referred to were accounted for and not lost.    In any event, those matters do not seem to have been brought to the

attention of the trial court or that any question was raised in respect thereto by exceptions.   On the whole, it is considered that there is no merit in such matters which can now justly work a disturbance of the judgment.

*By the Court.*—The judgment is affirmed, with costs in this court to the respondent.

A motion for a rehearing and for modification of the mandate was denied, with $25 costs, on June 13, 1916.