STRAIT, Respondent, vs. NORTHWESTERN STEEL & IRON
WORKS, Appellant.

*January 13—January 30, 1912.*

*Corporations: Contract made by president: Ratification: Payment for
property in stock: Agreement to repurchase stock: Breach:
Tender: Measure of damages.*

1. Where the president of defendant corporation conducted all the
   negotiations which resulted in the transfer by plaintiff to the
   corporation of personal property at the price of $5,000, to be
   paid in stock of the corporation, and the engagement of plaint-
   iff at a salary so long as his services should be satisfactory,
   with a further agreement to buy back his stock at par in case
   of his being discharged, the defendant, which approved such
   agreement and accepted and ratified the fruits of the negotia-
   tions, thereby ratified the acts of its president; and it, not the
   president personally, was bound by such agreement to repur-
   chase the stock.
2. After defendant had agreed to the price and salary named by
   plaintiff, the latter wired "Will accept and do my best, with
   the understanding you take my stock at par in case you wish
   me to retire," to which defendant replied, "Consider deal
   closed." *Held*, that this constituted a binding agreement to
   take plaintiff's stock off his hands at par in case of his dis-
   charge from defendant's employ.
3. Plaintiff having by letter offered to return the stock and de-
   manded his money, and having afterwards, before suit, ten-
   dered the certificates of stock properly indorsed, which offer and
   tender were refused, his acts were the equivalent of actual de-
   livery and entitled him to treat the contract as performed on
   his part and to sue for and recover the face of the certificates.

APPEAL from a judgment of the circuit court for Eau
Claire county: A. J. VINJE, Judge. *Affirmed.*

The complaint sets out two causes of action. The first al-
leges that the plaintiff, prior to February 20, 1907, was en-
gaged in the manufacture of agricultural and other machin-
ery at Elmira, New York, and that the defendant was simi-
larly engaged at Eau Claire, Wisconsin. It is alleged that
the defendant, desirous of enlarging its plant, agreed to pur-

chase personal property from the plaintiff of a schedule value of more than $11,000, the consideration to be paid therefor being corporate stock of the defendant to the amount of $5,000 and an agreement to employ the plaintiff at a salary of $100 per month as long as his services were satisfactory, and the additional agreement, in the event of the plaintiff's services being unsatisfactory or of his being discharged, that the defendant would take back the stock and in lieu thereof pay the plaintiff for said personal property the sum of $5,000. It is alleged that about April 1, 1908, after having been employed by the defendant for about a year, the plaintiff was discharged from the employ of the defendant because his services were unsatisfactory, that the plaintiff offered to return the stock certificates and demanded the $5,000 from the defendant, and that the defendant has refused to pay the $5,000.

The second cause of action alleged is for recovery of $12,000, the alleged value of the personal property sold by the plaintiff to the defendant.

The answer admits the agreement to purchase the personal property from the plaintiff and the paying therefor by $5,000 worth of stock; denies that there was an agreement to take back the stock at par in the event of the plaintiff's discharge from defendant's employ as unsatisfactory; and sets up a counterclaim for the salary paid the plaintiff, on the ground that his services were valueless to the defendant, a counterclaim for alleged large expenditures made necessary to avoid paying royalties to the plaintiff and his wife upon patents which they claimed to hold and which covered implements for the manufacture of which the property purchased from the plaintiff was solely adapted, and a further counterclaim based on the ground that the defendant had been compelled to make large expenditures because the plaintiff, by using the machinery and time of the defendant, had obtained patents upon implements for the manufacture of which the machines

owned by it were solely adapted, and because it became neces-
sary for the defendant to expend large sums of money in de-
signing and making new implements and machinery to manu-
facture a line of goods not covered by the plaintiff's patents.

The evidence shows that as the result of correspondence be-
tween the parties the plaintiff visited Eau Claire in the early
part of February, 1907, and inspected the plant of the de-
fendant.   On February 6 or 7, 1907, the president of the
defendant corporation visited the plaintiff's place of business
at Elmira, New York, inspected the personal property, made
inquiries about the business, and, after his return to Eau
Claire, wrote to the plaintiff on February 11, 1907, offering
$5,000 for the plaintiff's personal property, to be paid in
stock of the defendant corporation, promising the plaintiff
employment if he accepted the offer, and asking the plaintiff
to wire if he accepted the offer.

The plaintiff on February 13, 1907, sent to the defendant
the following telegraphic message: "With matters more defi-
nitely understood, probably can get together.   Writing;"
and in the letter stated: "As we talked, we think we ought to
be worth $1,200 per year if anything, and if it should appear
later on that *Mr. Strait's* services were not satisfactory to the
company, and you wished him to step aside, we would like to
have it arranged so that you would take our stock off our
hands at the sacrifice price that we consider we are putting
our appliances in for."   The defendant in reply wrote: "As
to your salary, $100 a month, I think, would be satisfactory
to our people," and asked the plaintiff to wire as to some de-
tails.   That part of the plaintiff's answer relative to the mat-
ters involved in the instant case was as follows: "Will accept,
and do my best, with understanding you take our stock at par
if you wish me to retire."

On February 20, 1907, the defendant wired the plaintiff
as follows: "Consider deal closed.   When can you start?
Considerable business in sight already," and also wrote him

a letter in which the repurchase of the stock was spoken of as not advisable.   On the day the plaintiff received defendant's telegram he telegraphed the defendant as follows: "Telegram received.   Will pull up and move at once."   The plaintiff packed up the property thus sold to the defendant and arrived with it at Eau Claire, received his certificates of stock, and went to work for the defendant.   About a year later the defendant notified him that his services were unsatisfactory.   Plaintiff then offered to turn over his stock and demanded $5,000 for it.   This was refused, and after negotiations for a settlement had failed the plaintiff brought action.

The court granted plaintiff's motion that a verdict be directed in his favor as to defendant's counterclaims; denied defendant's motion that a verdict be directed in its favor dismissing the plaintiff's cause of action as alleged in his complaint; and granted plaintiff's motion that a verdict be directed in his favor on his first cause of action.   This is an appeal from the judgment in accord with the verdict.

For the appellant there was a brief by *Bundy & Wilcox,* and oral argument by *C. T. Bundy.*   They cited *Moench v. Hower,* 137 Iowa, 621, 115 N. W. 229; *Erie City Iron Works v. Thomas,* 139 Fed. 995; *Calteaux v. Mueller,* 102 Wis. 525, 78 N. W. 1082; *Atlanta & W. B. & C. Asso. v. Smith,* 141 Wis. 377, 123 N. W. 106; *Tolman v. New Mexico & D. M. Co.* 4 Dak. 4, 22 N. W. 505; *Watters v. Mc-Guigan,* 72 Wis. 155, 39 N. W. 382; *Hicks P. Co. v. Wis. Cent. R. Co.* 138 Wis. 584, 120 N. W. 512; *Gehl v. Milwaukee P. Co.* 105 Wis. 573, 81 N. W. 666; *Woodman v. Blue Grass L. Co.* 125 Wis. 489, 103 N. W. 236, 104 N. W. 920; *Lincoln v. Charles Alshuler Mfg. Co.* 142 Wis. 475, 125 N. W. 908.

For the respondent there was a brief by *Sturdevant & Farr,* and oral argument by *L. M. Sturdevant.*   They cited, besides other cases, 3 Cook, Corp. (6th ed.) § 716, pp. 2290, 2291;

*Sprague C. M. Co. v. Fuller,* 158 Fed. 588; *Pittsburgh, C. & St. L. R. Co. v. Keokuk & H. B. Co.* 131 U. S. 371, 9 Sup. Ct. 770; *Milwaukee T. Co. v. Van Valkenburgh,* 132 Wis. 638, 112 N. W. 1083; *Northwestern F. Co. v. Lee,* 102 Wis. 426, 78 N. W. 584; *Haynes v. Kenosha E. R. Co.* 139 Wis. 227, 241, 119 N. W. 568, 121 N. W. 124; *Curtis L. & L. Co. v. Interior L. Co.* 137 Wis. 341, 118 N. W. 853; *Vent v. Duluth C. & S. Co.* 64 Minn. 307, 67 N. W. 70; *Browne v. St. Paul P. Works,* 62 Minn. 90, 64 N. W. 66; *Ophir C. M. Co. v. Brynteson,* 143 Fed. 829; *Gilchrist v. Highfield,* 140 Wis. 476, 123 N. W. 102; *Atlanta & W. B. & C. Asso. v. Smith,* 141 Wis. 377, 123 N. W. 106.

Siebecker, J.    The defendant contends that the court erred in holding, as a matter of law, that the negotiations between the plaintiff and the defendant's president, Mr. Rosholt, resulted in an agreement whereby defendant obligated itself to pay plaintiff $5,000 in cash for the $5,000 worth of shares of the defendant's corporate stock held by him.    The contention is based on two grounds: (1) that the negotiations fail to establish any such agreement, and (2) that if such an agreement was made it was a personal agreement between the plaintiff and Mr. Rosholt, defendant's president, and hence created no obligation of the defendant corporation.    The evidence shows that Mr. Rosholt, the president of the defendant corporation, conducted all the negotiations with the plaintiff through which the defendant acquired the personal property of the plaintiff's company, upon the terms and conditions under which the defendant accepted and now holds it, and the terms of plaintiff's employment by defendant.    These agreements were approved on defendant's part and accepted by it.    Under these circumstances Rosholt's authority to act for defendant in all matters embraced in such negotiations cannot be questioned.    These transactions establish the fact that Rosholt had authority to contract for a transfer of plaint-

iff's personal property to the defendant, to employ him for the defendant, and to agree upon the terms of the transactions, as held by the court. It is clearly shown that defendant accepted and retained the fruits of his negotiations with the plaintiff and fully ratified his agreements. It must therefore be held that none of such agreements were the personal agreements of Rosholt and that they were in fact made by him as the agent of the defendant.

The offer by the defendant to purchase plaintiff's personal property and to employ him in the defendant's business at $100 per month was accepted by the plaintiff "with the understanding" that defendant would take plaintiff's stock "at par" if the plaintiff was to retire from the business. This was agreed to by the defendant, as evidenced by its answer of February 20, 1907, which in effect accepted this offer of plaintiff's, and to which plaintiff replied affirming the agreement and stating that he would move at once. The context of these communications clearly shows that the negotiations resulted in an agreement by the defendant to purchase plaintiff's property, to employ him in its business, and to take the corporate stock off his hands if he should be discharged from its service. Subsequent events fully corroborate these facts. It appears that the plaintiff, pursuant to these arrangements, forthwith transported the property embraced in this transfer to Eau Claire, that defendant accepted it, and that plaintiff entered into and remained in the defendant's employ until his discharge about April 1, 1908, the year following. The court's conclusion that the evidence showed without dispute that the defendant agreed to purchase the personal property specified, pay therefor by transferring to plaintiff $5,000 worth of its corporate stock, and in case plaintiff was discharged from its service to take such stock off his hands, is fully sustained by the record and cannot be disturbed.

It appears that the plaintiff, after his discharge from defendant's service in April, 1908, offered by letter to return

this stock to the defendant and demanded payment of $5,000 in cash therefor. Defendant refused to comply with this request. Plaintiff thereafter and before action was brought tendered to defendant the certificates of stock properly indorsed. Again it refused to accept them, and denied that the defendant company was obligated to receive them. Thereupon this action was commenced to recover the sum of $5,000 under such agreement. At the trial plaintiff again tendered the certificates of stock and defendant persisted in its refusal to accept them. There is no dispute as to plaintiff's discharge from the defendant's employ as alleged by him. The question is: To what relief is plaintiff entitled under these facts? The terms of the stipulation are in substance that in case of plaintiff's discharge from defendant's employ it would take his stock at par. The effect of this is that the defendant obligated itself to take at par the $5,000 worth of its stock held by the plaintiff whenever the contingency of his discharge from its employ happened. Plaintiff has tendered full performance of his obligation and stands ready to comply with its terms by transferring the stock to the defendant. Under these circumstances the plaintiff's acts are in a legal sense the equivalent of a delivery of the certificates of stock and entitle him to a recovery of the agreed price, namely, $5,000. After plaintiff, by entering defendant's employ and continuing therein until discharged, had performed his part of the agreement and had tendered a transfer of the stock certificates in compliance therewith, defendant's refusal to pay for the stock operates as a breach of this part of the agreement. Upon these facts and the circumstances of the transaction plaintiff is entitled to stand upon the agreement as being performed by him and the defendant is obligated to accept the certificates of stock as tendered and pay the plaintiff the amount due for the stock, namely, the sum of $5,000. *Thorndike v. Locke,* 98 Mass. 340; *Pearson v. Mason,* 120

Mass. 53; *Pratt v. S. Freeman & Sons Mfg. Co.* 115 Wis. 648, 92 N. W. 368.

We are satisfied from the record that the court properly dismissed the defendant's counterclaim for want of evidence to support it.

The judgment is correct as to amount and proper in form and must stand.

*By the Court.*—Judgment affirmed.

,VINJE, J., took no part.