SMITH, Respondent, vs. LINGELBACH, Administrator, Appellant.

*April 12—May 9, 1922.*

*Corporations: Sale of stock certificates: Uniform Sales Act: Uniform Stock Transfer Act: Refusal of buyer to perform: Delivery: Remedies of seller.*

1. The Uniform Sales Act, made applicable only to "goods" and "documents of title to goods," does not include within its provisions certificates of corporate stock because sec. 1684*t*—76, Stats., states that the term "goods" includes chattels personal other than things in action and money, and that "documents of title to goods" includes any bill of lading, dock warrant, warehouse receipt or order for the delivery of goods, or any other document used in the ordinary course of business in the sale or transfer of goods, and because the Uniform Stock Transfer Act specifically relates to the transfer of shares of corporate stock.

2. On the refusal of a buyer to accept certificates of bank stock tendered by the seller, the rights of the parties are governed, under sec. 1751*n*—10, Stats., by the general principles of law governing the performance of contracts, regardless of whether the certificates were issued to the seller before or after enactment of the Uniform Stock Transfer Act.

3. In case of such refusal the seller could either hold the stock for the benefit of the buyer and sue for the purchase price, or could elect to sell the stock and recover the difference

Smith v. Lingelbach, 177 Wis. 170.

between the selling price and the contract price, or could elect to keep the property as his own and recover the difference between the contract price and the market price at the time of the breach and at the time and place of delivery.

APPEAL from a judgment of the circuit court for Oconto county: W. B. QUINLAN, Circuit Judge. *Affirmed.*

Contract.  The complaint alleges that the plaintiff and defendant entered into an agreement as follows:

"For value received, *Ella N. Smith* of Oconto, Wisconsin, hereby agrees to sell, and for value received George Beyer of Oconto, Wisconsin, hereby agrees to buy, one hundred and fifty-four (154) shares of Oconto National Bank stock at price of $135 a share on or before September 5, 1919.

"Witness our hands and seals this 7th day of July, 1919, at Oconto, Wisconsin.

"ELLA N. SMITH.    (Seal)
"GEORGE BEYER."    (Seal)

The complaint alleges that the plaintiff has at all times been ready and willing to perform the contract on her part; that the defendant refused to accept the stock on September 5, 1919; that tender thereof was made to the defendant, and the plaintiff is now ready and willing to deliver the stock pursuant to the contract, and demands judgment for $20,790, with interest and costs.

The answer alleges that the signature of the defendant was induced by fraud; that the defendant then and there relied upon false representations made to him and was thereby induced to execute and deliver the instrument and not otherwise.

The answer further alleges that the plaintiff did not own 154 shares of stock in the Oconto National Bank, but in truth and in fact was the owner of only 144 shares.

The answer further alleges there was no consideration, and contains a general denial.

Upon the trial it appeared without dispute that the contract in question was signed by the defendant, and the only

contested question of fact related to the reading of the contract by Mr. Beyer before signing it. This issue was submitted to the jury upon a special verdict, and the jury found George Beyer did read the instrument in question before he signed it. There was judgment for the plaintiff, from which the defendant appeals.

For the appellant there was a brief by *Classon & Whitcomb* of Oconto, and oral argument by *A. J. Whitcomb* and *Allan V. Classon.*

For the respondent there was a brief by *Classon & O'Kelliher* of Oconto, and oral argument by *V. J. O'Kelliher.*

ROSENBERRY, J.    The case is argued here upon both sides as if the rights of the parties were to be determined pursuant to the provisions of the Uniform Sales Act, and special reference is made to secs. 1684*t*—19, 1684*t*—42, 1684*t*—63, and 1684*t*—64, Stats.

After the trial and before the case was presented here the defendant died and the action was revived against *F. J. Lingelbach,* the administrator of his estate. The contention of the defendant is that the action is one for damages; that no damages were proven, and that the plaintiff cannot maintain an action for the purchase price, but that a recovery, if any, must be limited to the difference between the market value of the stock and the contract price.

We shall first consider the application of the Uniform Sales Act. That act by its terms applies only to goods and documents of title to goods. " 'Goods' include all chattels personal other than things in action and money." Sec. 1684*t*—76.

While certificates of stock are not strictly choses in action, they have been repeatedly so classified. 14 Corp. Jur. p. 389, § 512, and cases cited; *First Nat. Bank v. Holland,* 99 Va. 495, 39 S. E. 126, 55 L. R. A. 155.

A document of title to goods is by the act said to include "Any bill of lading, dock warrant, warehouse receipt or

order for the delivery of goods, or any other document used in the ordinary course of business in the sale or transfer of goods," etc.    Sec. 1684*t*—76.

The Uniform Sales Act does not include within its provisions certificates of stock.    *Millard v. Green,* 94 Conn. 597, 110 Atl. 177, 9 A. L. R. 1610, at p. 1617.

In addition to the fact that the Uniform Sales Act by its terms excluded certificates of stock, there is the additional consideration that in 1913, two years after the adoption of the Uniform Sales Act, the legislature adopted the Uniform Stock Transfer Act (secs. 1751*n*—1 to 1751*n*—23, Stats.), which by its terms relates specifically to the transfer of shares of stock in a corporation and would therefore seem to be exclusive of the Uniform Sales Act.

The case was tried apparently without reference to the Uniform Stock Transfer Act, although it is referred to in the brief of the respondent here.    The Uniform Stock Transfer Act applies by its terms only to certificates issued after the taking effect of the act.    A careful examination of the record fails to disclose the date upon which the certificates of stock in this case were issued to the plaintiff.

The Uniform Stock Transfer Act (sec. 1751*n*—10, Stats.) provides:

"An attempted transfer of title to a certificate or to the shares represented thereby without delivery of the certificate shall have the effect of a promise to transfer and the obligation, if any, imposed by such promise shall be determined by the law governing the formation and performance of contracts."

Whether the certificates were issued to the plaintiff before or after the enactment of the Uniform Stock Transfer Act, the rights of the parties must be determined in accordance with the general principles of law governing the performance of contracts.

The contract in this case must be treated as an executory contract for the sale of 154 shares of the capital stock of the

Oconto National Bank. There was no renunciation of the contract by the buyer prior to the time that plaintiff tendered to him the stock described in the contract. Upon tendering the stock to the buyer in accordance with the terms of the contract the plaintiff had, in the event of the refusal of the buyer to accept and pay for the stock, a choice of remedies: she might hold the stock for the benefit of the buyer and sue for the purchase price, or she might elect to sell the stock and recover the difference between the selling price and the contract price, or she might elect to keep the property as her own and recover the difference between the contract price and the market price at the time of the breach and at the time and place of delivery. *Pratt v. S. Freeman & Sons Mfg. Co.* 115 Wis. 648, 92 N. W. 368; *Strait v. Northwestern S. & I. Works,* 148 Wis. 254, 134 N. W. 387; 4 Thompson, Corp. p. 699, § 4172.

In *Strait v. Northwestern S. & I. Works, supra,* the defendant had contracted with the plaintiff that it would take certain stock at par in the event plaintiff should retire from the defendant corporation. The plaintiff did retire and thereupon tendered to the defendant the stock described in the contract and demanded payment therefor in accordance with the terms of the contract. The defendant refused to accept the stock or to pay therefor and suit was brought to recover the amount of the agreed purchase price. The court said:

"Under these circumstances the plaintiff's acts are in a legal sense the equivalent of a delivery of the certificates of stock and entitle him to a recovery of the agreed price, namely, $5,000."

It is considered, therefore, that the plaintiff was entitled, upon tendering the stock to the buyer and his refusal to accept and pay for it, there having been no prior renunciation, to hold it for the benefit of the buyer and to recover as damages the contract price. *Boyington v. Sweeney, 77*

Wis. 55, 45 N. W. 938.    See, also, *Badger State L. Co. v. G. W. Jones L. Co.* 140 Wis. 73, 121 N. W. 933; *Lincoln v. Charles Alshuler Mfg. Co.* 142 Wis. 475, 125 N. W. 908.

Cases where a contract has been fully performed by the vendor prior to renunciation or breach by the vendee are to be distinguished from cases where the contract remains executory upon both sides at the time the breach occurs. *Haueter v. Marty,* 156 Wis. 208, 145 N. W. 775.

*By the Court.*—Judgment affirmed.