BOUTELLE, Respondent, v. WINNE, Appellant.

*No. 7. Argued October 1, 1968.—Decided October 29, 1968.*
(Also reported in 162 N. W. 2d 40.)

362

For the appellant there was a brief by *Hansen, Eggers, Berres & Kelley* of Beloit, and oral argument by *Leo H. Hansen.*

For the respondent there was a brief by *Geffs, Geffs, Block & Geffs* of Janesville, and oral argument by *Jacob Geffs.*

HANLEY, J. This appeal presents the following issues:

1. Did the parties enter into a valid settlement contract;

2. Was the original buy-sell agreement subject to ch. 122, Stats. 1963, the Uniform Conditional Sales Act; and

3. Was the seller estopped from denying the application of ch. 122, Stats. 1963, following the buyer's default?

*Validity of Settlement Contract.*

The trial court specifically found that the parties entered into a binding settlement contract.

"The finding of a trial court will be set aside upon appeal only if it is contrary to the great weight and clear preponderance of the evidence." *Krueger v. Steffen* (1966), 30 Wis. 2d 445, 448, 141 N. W. 2d 200.

The record contains sufficient direct evidence of the agreement and is replete with inferences that such a contract was formed. The plaintiff testified to the conduct and conversation of the defendant at a meeting which undisputedly took place. The accountant supported the plaintiff's testimony. The plaintiff's attorney [2] testified that he told the defendant the purpose of the settlement meeting, that after that meeting the defendant had discussed the mode of payment of the balance due with him, and that the defendant had given him a $2,000 check which was to be applied to the balance due the plaintiff. Admittedly these items were disputed, but the evidence referred to supports the trial court's finding that a settlement contract was made.

*Application of Ch. 122, Stats. 1963.*

At the time of the original contract to sell the insurance agency,[3] the Uniform Commercial Code had not yet become effective.[4] The contract was executed on a preprinted conditional sales contract form which purported to be subject to ch. 122, Stats. 1963, the Uniform Conditional Sales Act.

---

[2] The attorney who represented the plaintiff during the occasion of the default on the original buy-sell agreement was not the plaintiff's attorney at trial.

[3] The contract was dated December 30, 1964, but was apparently not executed until June 30, 1965.

[4] The effective date of the Commercial Code in Wisconsin was July 1, 1965.

It is the defendant's position that the Uniform Conditional Sales Act applies and that the seller's sole remedy under that act is to repossess unless he follows the statutory procedure in obtaining a deficiency judgment. It is undisputed that plaintiff did not follow the statutory procedure here.

Plaintiff, on the other hand, contends that the sale of corporate stock does not fall under the Uniform Conditional Sales Act which relates only to the sale of "goods." [5]

This court considered the exact definition of "goods" in *Smith v. Lingelbach* (1922), 177 Wis. 170, 173, 187 N. W. 1007: [6]

"The Uniform Sales Act does not include within its provisions certificates of stock. . . .

"In addition to the fact that the Uniform Sales Act by its terms excluded certificates of stock, there is the additional consideration that in 1913, two years after

---

[5] "122.01 **Definitions.** (1) In this chapter 'conditional sale' means (a) Any contract for the sale of goods under which possession is delivered to the buyer and the property in the goods is to vest in the buyer at a subsequent time upon the payment of part or all of the price, or upon the performance of any other condition or the happening of any contingency; or (b) any contract for the bailment or leasing of goods by which the bailee or lessee contracts to pay as compensation a sum substantially equivalent to the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming the owner of such goods upon full compliance with the terms of the contract.

". . .

"(4) 'Goods' means all chattels personal other than things in action and money, and includes emblements, industrial growing crops, and things attached to or forming a part of land which are agreed to be severed before sale or under the conditional sale." Stats. 1963.

[6] In *Smith*, the court was considering the definition of "goods" as it appeared in ch. 121, Stats. 1963, which is the Uniform Sales Act. However, the definition of "goods" in the Uniform Sales Act is exactly the same as the definition of "goods" in the Uniform Conditional Sales Act.

the adoption of the Uniform Sales Act, the legislature adopted the Uniform Stock Transfer Act . . . which by its terms relates specifically to the transfer of shares of stock in a corporation and would therefore seem to be exclusive of the Uniform Sales Act."

The Uniform Stock Transfer Act [7] was still in force at the time of the making of the original buy-sell agreement. It would seem, therefore, that the provisions of the Uniform Conditional Sales Act did not properly apply to the buy-sell agreement, nor would the remedies under that act be applicable to a default on a stock sale.

However, defendant urges that the buy-sell agreement evidenced an intent to sell the *property* of the corporation and that the sale of the shares of stock was only a useful method of effecting the property transfer. This contention is not well taken. It is undisputed that the defendant originally took over the insurance agency as a going concern. The corporation still owned all of the property and still owed all of the debts. The corporate entity existed both before and after the sale and only the management of the corporation changed. These factors lead to the logical conclusion that the parties intended a sale of stock and not a sale of assets. It follows, then, that the provisions of the Uniform Conditional Sales Act did not apply when the buy-sell agreement was defaulted.[8]

### *Question of Estoppel.*

Since the Uniform Conditional Sales Act does not apply to the buy-sell agreement, it is necessary to find what law did apply in order to determine the plaintiff's

[7] Ch. 183, Stats. 1963. The Uniform Stock Transfer Act was also repealed by the Uniform Commercial Code.

[8] The court is aware of the fact that there is a split in authority as to whether or not shares of stock are "goods" as defined in the Uniform Sales Act and the Uniform Conditional Sales Act. *See* 46 Am. Jur., *Sales,* p. 198, sec. 3, and cases cited therein. The majority rule is that they are not "goods" and that is the position taken by this court in *Smith v. Lingelbach, supra.*

remedy when the buyer defaulted on the installment contract.

The Uniform Stock Transfer Act applies to all stock transfers when the stock certificates were issued after June 9, 1913.[9] However, the act does not specify any particular remedies in the case of a stock buyer's default. Sec. 183.17, Stats. 1963, would then control.

"183.17 **Law merchant controls.** In any case not provided for by this chapter the rules of law and equity . . . shall govern."

Thus the general principles of law governing the performance of contracts must be applied to the original buy-sell agreement.

When the defendant defaulted, the plaintiff tried to find the defendant, but the defendant was out of town for the weekend. The plaintiff then immediately repossessed the insurance agency.

The original contract between the parties provided:

"That in case of default in any of the payments of the principal or interest, when due as above specified, the said Clyde L. Boutelle, seller shall thereupon forthwith have the right to declare this Contract at an end, and with or without notice, to take immediate possession of said above described property . . . ."

Although defendant never objected to the retaking, he now contends that the plaintiff never first declared the contract at an end. Defendant suggests that such a retaking was in violation of the terms of the contract and the governing principles of common law. Defendant then points out that sec. 122.16, Stats. 1963,[10] of the Uniform

---

[9] Sec. 183.22, Stats. 1963. Although the record does not indicate that the shares in the Boutelle Insurance Agency, Inc., were issued after the applicable date, it is safe to assume that they were.

[10] "122.16 **Retaking possession.** When the buyer shall be in default in the payment of any sum due under the contract, or in the performance of any other condition which the contract requires him to perform in order to obtain the property in the goods, or in the performance of any promise, the breach of which is by the

Conditional Sales Act permits a retaking without first declaring the contract to be terminated. The conclusion is that the plaintiff must rely on the provisions of the act to support his retaking and that he should be estopped from denying the application of the act to his remedies upon default.

This case is not a proper one to apply estoppel. The defendant never changed his position in reliance on the Uniform Conditional Sales Act nor did the plaintiff ever rely on the act in retaking. Neither party was represented by an attorney until after the retaking. There is nothing in the record to indicate that either of the parties was even aware of the act or its provisions.

Moreover, there was another provision in the original contract which supported plaintiff's retaking:

"And in case the said seller shall at any time deem the said property or the said debt insecure, [he is] hereby authorized and empowered to take immediate possession of said property or any part thereof and to sell and apply the proceeds as above provided."

The plaintiff's retaking consisted of taking some checks payable to the insurance agency on July 2d. These checks were returned following a meeting with the defendant on July 5th. The trial court determined that within ten days the parties entered into a voluntary settlement contract.

". . . after breach of the original contract the claim for damages may be discharged by the performance of a new agreement or by the mere making of the new agreement, where that is its meaning, or by the acceptance of benefits under the new contract. . . ." 17 Am. Jur. 2d, *Contracts,* pp. 965, 966, sec. 493.

We now reach appellant's real source of complaint. His objection is that he never received a consideration for the settlement contract. He contends that the vendor

contract expressly made a ground for the retaking of the goods, the seller may retake possession thereof. . . ."

chose to repossess the property and that having made that choice he could no longer get a deficiency judgment. If the seller could not get a deficiency judgment, then what did he give as consideration for the settlement contract wherein the buyer returned the insurance agency and still had to pay over $6,200?

In the light of this contention by the appellant, it is necessary to determine what the vendor's remedies were upon the vendee's default.

It must be conceded, of course, that this buy-sell agreement was a conditional sales contract even though it was not subject to the Uniform Conditional Sales Act. Therefore, the rules of law and equity pertaining to conditional sales are particularly applicable:

"It is a general rule that under the ordinary contract of conditional sale, which does not expressly confer upon the seller the right to recover the balance of the purchase price after reselling the property for a sum less than that remaining unpaid, if the seller takes possession of the property upon default of the buyer, and does so as owner, and as such owner sells or otherwise uses the property, he cannot recover any portion of the unpaid purchase price." Annot. 37 A. L. R. 91, supplemented by annotations at 83 A. L. R. 959, 960; 99 A. L. R. 1288, 1289; 49 A. L. R. 2d 15, 20.

This rule was adopted in this state by *Singer v. Millard* (1920), 171 Wis. 637, 177 N. W. 893, to the extent that a vendor could not retake the property, use it as his own, and still hold the vendee to the purchase price.

The general Wisconsin rule was well set out in *Defiance Machine Works v. Gill* (1920), 170 Wis. 477, 481, 482, 175 N. W. 940. This court stated:

". . . his contention being that a vendor of goods, upon a contract of a conditional sale, must elect whether he will retake the goods or sue for the purchase price, and that when he resorts to one of these remedies he waives his right to resort to the other . . . This is not the law of this state. It was held in *Wiedenbeck-Dobelin Co. v. Anderson*, 168 Wis. 212, 169 N. W. 615, that the two

remedies were not inconsistent, and that by pursuing one the vendor did not waive his right to the other."

In all fairness, however, in the case cited above the vendor sued on the contract and *then* repossessed. Here it is important to show that although the vendor repossessed, he could still have resold and sued for a deficiency judgment.[11] However, in *Rudolph Wurlitzer Co. v. Mandarin Co.* (1922), 178 Wis. 185, 188 N. W. 639, the vendor repossessed and then sued on the contract. After first finding that the contract involved was a conditional sales contract, the court said at pages 189 and 190:

". . . They also argue that in such contracts as the one involved the vendor may, on default by the vendee to comply with the conditions, retake the property, or may treat the sale as absolute and bring an action for the price, but that the assertion of either right is a waiver or abandonment of the other. . . .
"There is undoubtedly considerable authority in other states for this construction . . . .
"But no elaborate discussion of the subject seems necessary, since this court has adopted the rule that under similar contracts the remedies are cumulative and the assertion of one right is not a waiver of the other. . . ."

A combined reading of the *Singer, Defiance Machine Works* and *Rudolph Wurlitzer Cases,*[12] *supra,* indicates that a deficiency judgment can be obtained in Wisconsin outside the Uniform Conditional Sales Act,[13] by taking

[11] It is necessary to prove that the vendor had a right to sue for a deficiency judgment because otherwise he did not give any consideration for the settlement contract with the vendee. In other words, if the vendor's sole remedy was repossession, when the settlement contract was made, the vendee paid over $6,200 but he received no consideration.

[12] The Uniform Conditional Sales Act in Wisconsin applied to contracts executed after July 31, 1919. The cases cited here were the last expression of this court on the state of the law of conditional sales prior to the uniform act.

[13] A deficiency judgment could also be obtained under the Uniform Conditional Sales Act, as it can under the Uniform Commercial Code, upon compliance with procedural steps.

possession of the property, selling it and applying the proceeds to the indebtedness.

The point of the previous discussion is that Mr. Boutelle did not waive his right to resell the insurance agency by repossessing. He could have sold the agency, applied the proceeds to the indebtedness, and held Mr. Winne liable for the deficiency. In effect, this is exactly what happened in the settlement agreement. Mr. Boutelle bought back the business at the price agreed on by the parties before the accountant. The price was deducted from the remainder due on the original contract, and Mr. Winne agreed to pay the deficiency. There was obvious consideration for the settlement contract. This is the effect of the trial court's finding and it is amply supported by the evidence.

*By the Court.*—Judgment affirmed.