**Patrick BELL, Sr., Special Administrator of the Estate of Daniel Bell, Deceased, and in his own behalf, et al., Plaintiffs,**

v.

**CITY OF MILWAUKEE, et al., Defendants.**

**Civ. A. No. 79–C–927.**

United States District Court,
E. D. Wisconsin.

June 4, 1981.

---

Jerome D. Krings, Thomas M. Jacobson, Alan Derzon, Curry First and Walter F. Kelly, Milwaukee, Wis., for plaintiffs.

Rudolph M. Konrad, Asst. City Atty., Milwaukee, Wis., for defendants City of Milwaukee, Milwaukee Police Dept., Howard Johnson, and Edwin Shaffer.

Robert G. Ott, Principal Asst. Corp. Counsel, Milwaukee, Wis., for defendants Milwaukee County and Office of Milwaukee County Dist. Atty.

Franklyn M. Gimbel, James M. Fergal, Milwaukee, Wis., for defendant Grady.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

On April 3, 1981, oral argument was held in the above-captioned action on the motion for summary judgment brought by the defendants City of Milwaukee, Howard Johnson, Thomas Grady, Jr., Edwin Shaffer, the Milwaukee Police Department, Milwaukee County, and the Office of Milwaukee County District Attorney. Following oral argument, the Court denied from the bench the defendants' motion for summary judgment and stated that the reasons for the Court's ruling would be set forth in a decision which would follow at a later date. This constitutes the Court's decision denying the foregoing named defendants' motion for summary judgment.

This action arises out of the fatal shooting of Daniel Bell on February 2, 1958, by defendant Thomas Grady, Jr., who at the time of the shooting was a City of Milwaukee police officer. The action was commenced in October 1979, by Patrick Bell, Sr., who is the special administrator of the estate of Daniel Bell, Daniel Bell's father Dolphus Bell, and Daniel Bell's twelve surviving brothers and sisters. Named as defendants in addition to Grady are the City of Milwaukee, Howard Johnson, Edwin Shaffer, the Milwaukee Police Department, Milwaukee County, and the Office of Milwaukee County District Attorney.

## I. *FACTS UPON WHICH THE MOTIONS FOR SUMMARY JUDGMENT ARE BASED*

The following relevant facts are not in dispute for purposes of deciding the defendants' motion for summary judgment.

The shooting of Daniel Bell spurred, inter alia, an investigation by a Milwaukee County coroner's jury. That inquest was held by Deputy Medical Examiner J. A. LaMonte on February 14, 1958. Present at the inquest besides LaMonte were District Attorney William McCauley, Assistant District Attorney Hugh O'Connell, Bell family attorneys Milton Murray and George Hamilton, and Bell family members Sylvia White Bell, Joseph Bell, and Walter Bell.

The transcript of that inquest reveals that many witnesses were summoned by LaMonte, McCauley and O'Connell. Both patrolman Thomas Grady, Jr. and his partner Louis Krause testified. The patrolmen who arrived on the scene after the shooting also testified, which included Carl R. Nelson, Louis Demke, John R. Randa, Paul Bucholtz, Harold W. Hauke, and George A. Timm. The police officers who conducted the internal police department investigation also testified, which included detective Russell Vorpagel, detective Howard T. Hughes, and detective sergeant Edwin S. Shaffer. Several civilian witnesses testified, including Eugene Bradshaw, Wesley McCloud, Jr., Fanny Mae Boss, Anna Mae Hardman, Charles W. Avery, Edward Hammond, and William Hochstaetter. Also testifying at the inquest were John L. Warnette, Superintendent of the Wisconsin Crime Lab Charles M. Wilson, and Milwaukee County Medical Examiner Dr. L. J. VanHecke. (Ex. 25 to defendants' motion for summary judgment) [1]

The transcript of that inquest further reveals the examination of those witnesses by LaMonte, McCauley, and O'Connell. Patrolman Nelson testified that upon his arrival at the scene he had observed that (1) Daniel Bell's body was face down; (2) Daniel Bell's right hand held a knife; (3) Daniel Bell's fingers were flexed at the knuckles, but not flexed tightly; and (4) Daniel Bell's thumb pointed straight up. (Ex. 25 at 16–17) Patrolman Randa testified that upon his arrival at the scene he had observed that Daniel Bell's fingers were loosely flexed and pointing down toward the palm of his hand. (Ex. 25 at 29) Patrolman Timm testified that upon his arrival at the scene he had observed that (1) Daniel Bell's hand held a knife; (2) Daniel Bell's palm of his right hand was pointing down; and (3) Daniel Bell's fingertips were resting on the ground. (Ex. 25 at 121)

Detective Vorpagel testified that Grady had stated that he had shot Daniel Bell from the street, standing five feet from the east curb. Detective Vorpagel further testified that the distance from the spot where the shot was fired to the spot where Daniel Bell's head was marked on the sidewalk was 23 feet, 9 inches. (Ex. 25 at 46–47) Detective Sergeant Edwin Shaffer testified that Grady had stated that he had shot Daniel Bell from a distance of six feet. (Ex. 25 at 70)

Eugene Bradshaw testified that at the time of the shooting it had appeared as though Grady was close enough to catch Daniel Bell; he further testified that he had walked to the scene of the shooting and had not seen a knife. (Ex. 25 at 89–90) Wesley McCloud, Jr., testified that at the time of the shooting Grady was almost behind Daniel Bell. (Ex. 25 at 108–109) Edward Hammond testified that at the time of the shooting, Grady was fifteen feet from Daniel Bell. (Ex. 25 at 173) William Hochstaetter testified that after the shooting he had viewed Daniel Bell's body from a distance of two feet; he further testified that he had observed that (1) Daniel Bell's hands were outstretched, flat, and open; (2) Daniel Bell's hands held no object; (3) no objects were near Daniel Bell's body; and (4) two police officers had bent over Daniel Bell's body. (Ex. 25 at 191–193)

---

1. Hereinafter exhibit numbers will refer to exhibits in the appendix to defendants' motion for summary judgment.

Superintendent of the Wisconsin Crime Lab Charles Wilson testified that, based on his examination of the physical evidence, it was his opinion that the muzzle of Grady's gun had been in contact with Daniel Bell's topcoat at the time of the shooting and that the gun had not been fired from a distance of fifteen to twenty-three feet. (Ex. 25 at 206) Dr. VanHecke testified that based on his autopsy, it was his opinion that the gunshot wound had been the cause of Daniel Bell's death. (Ex. 25 at 208–209)

On August 10, 1959, Daniel Bell's father, Dolphus Bell ("Dock Bell"), filed a claim with the City of Milwaukee, asking for damages in the amount of $18,125.00 for the wrongful death of his son.[2] That claim was denied by the City of Milwaukee. (Ex. 1) Subsequently, on February 1, 1960, Dock Bell commenced an action in Milwaukee County Circuit Court for the wrongful death and indemnification pursuant to then § 270.58, Wis.Stats. (1957), against Thomas Grady and the City of Milwaukee, asking for damages in the amount of $18,125.00.[3] (Ex. 2) The defendants Grady and the City of Milwaukee answered the action on March 1, 1960 claiming, inter alia, that the shooting of Daniel Bell by Grady had been in self-defense. (Ex. 4)

Dock Bell's state court action was commenced before Judge Michael T. Sullivan on September 13, 1961, (Ex. 12), and resulted in a mistrial. *Id.*

Dock Bell's action was then reassigned for trial to Judge Robert L. Landry. (Ex. 8) In the words of the attorney for Dock Bell, Max Raskin, the following events took place:

> "The trial of the case was scheduled to begin on October 10, 1961. Plaintiff and his two adult daughters, one of whom being Mrs. Sylvia White with whom

plaintiff resided during the period of the trial, at 2918 North Palmer Street, Milwaukee, Wisconsin, were at all times mentioned in this affidavit present in the court room of Judge Robert Landry.

> "Following inquiry of counsel for plaintiff and defendants by Judge Landry whether there exists the possibility of settlement, Judge Landry began conciliation efforts to amicably dispose of the case. Such efforts culminated in an offer of settlement of One Thousand Eight Hundred ($1,800.00) Dollars made by the defendants to the plaintiff.

> "Affiant thereupon explained the offer of settlement to the plaintiff and his two daughters and advised them that the offer was reasonable in view of the difficulties of proof to be encountered by the plaintiff to establish his case. The affiant further explained that should plaintiff accept he will be required to pay out of said sum of One Thousand Eight Hundred ($1,800.00) Dollars attorney fees in the amount of Six Hundred ($600.00) Dollars. Affiant further explained that his acceptance of the offer will mean that he will fully and forever discharge defendants from any further claim that he may have as a result of the death of his son Daniel Bell.

> "Judge Robert Landry thereupon requested that the plaintiff state in open court whether he is willing to accept the sum of One Thousand Eight Hundred ($1,800.00) Dollars, and the plaintiff stated that he is so willing.

> "An oral stipulation for dismissal of the action upon the merits was entered into by the attorneys in the presence of their respective parties before Judge Robert Landry." (Ex. 11)

---

**2.** The total damages of $18,125.00 can be broken down as follows: (1) $15,000.00 for pecuniary injury, which was the maximum that could be recovered for pecuniary damages under then § 331.04(4), Wis.Stats. (1957); (2) $2,500.00 for loss of society and companionship, which was the maximum that could be recovered for such loss under then § 331.04(4), Wis.Stats. (1957), and was only to be awarded to the spouse or the parents of the deceased; and (3) $625.00 for funeral expenses incurred, which was the amount of funeral expenses that could be recovered under then § 331.04(5), Wis.Stats. (1957).

**3.** For a breakdown of the total damages of $18,125.00, see footnote 2 and accompanying text.

This oral stipulation for dismissal was reduced to writing, and was presented to Dock Bell for his signature, as a condition for payment of the settlement. *Id.* Because Dock Bell refused to sign the release or otherwise to cooperate with Attorney Raskin, Attorney Raskin moved Judge Landry for an order to show cause why the defendants should not deposit with the Clerk of Circuit Court the sum agreed upon between the parties as being in full settlement of Dock Bell's claims and why Attorney Raskin should not receive his attorney fees out of this sum. *Id.*

On November 21, 1961, Judge Landry issued an order in response to Attorney Raskin's order to show cause. (Ex. 12) Judge Landry found, inter alia, that the order to show cause had been personally served on Dock Bell, that Dock Bell had failed to appear for the hearing, that Milwaukee County had attached part of the settlement for payment of Dock Bell's medical bills, and that the settlement was fair and reasonable under all the circumstances. *Id.* Judge Landry then ordered that the settlement be disbursed in part to Max Raskin, in part to Milwaukee County, and the remainder to Dock Bell.

Thereafter, on November 21, 1961, Judge Landry approved the stipulation and order for dismissal of the action with prejudice, which had been signed on behalf of the defendants by Attorney George A. Bowman, Jr., and on behalf of Dock Bell by Attorney Raskin. (Ex. 13)

On November 24, 1961, Attorney Raskin signed on the behalf of Dock Bell two "Release of Claim" forms for all claims arising out of the shooting of Daniel Bell. (Exs. 14 & 15)

Dock Bell steadfastly refused to endorse his settlement check, and on November 5, 1965, the check was returned to the City of Milwaukee Treasury. (Exs. 20 & 21)

The depositions of plaintiff members of the Bell family have been taken in connection with this action. Sylvia White Bell stated in her deposition that she and her family have known from the very beginning that the police had lied and had covered up the true facts of the shooting, because the knife was found in Daniel Bell's right hand, though he was definitely left-handed. (Deposition of Sylvia White Bell at 9–10) Both Joseph and Walter Bell stated that they had their doubts for reasons of Daniel Bell's being left-handed and the ballister's evidence and other discrepancies which had been brought out at the inquest. (Deposition of Joseph Bell at 31–33; deposition of Walter Bell at 8–11) In his deposition, Ernest Bell expressed his doubts for the reasons that he knew Daniel Bell never had carried his knife with him and was left-handed. (Deposition of Ernest Bell at 11–12)

In their depositions, both the attorney who represented the Bell family throughout the inquest into the shooting of Daniel Bell, Milton Murray, and the attorney who represented Dock Bell in his state court action, Max Raskin, stated their belief that the true nature of the shooting had not been disclosed. (Deposition of Murray at 49–51; deposition of Raskin at 22)

## II. LEGAL GROUNDS UPON WHICH THE MOTIONS FOR SUMMARY JUDGMENT ARE BASED

The defendants City of Milwaukee, Howard Johnson, Edwin Shaffer, and the Milwaukee Police Department advance two principal arguments in support of their motion for summary judgment: (1) this action is barred by the doctrine of res judicata; and (2) this action is barred by the applicable statute of limitations.

In addition to the arguments that this action is barred by the doctrine of res judicata and the applicable statute of limitations, the defendants Milwaukee County and Office of Milwaukee County District Attorney advance two other arguments in support of their motion for summary judgment: (1) that District Attorney William McCauley represented the State of Wisconsin, not Milwaukee County, at the coroner's inquest held in connection with the shooting of Daniel Bell; and (2) that District Attorney William McCauley is absolutely immune

from liability for damages under 42 U.S.C. § 1983 for alleged civil rights violations committed in the course of initiating a prosecution and in presenting the state's case.

### A. *Whether this action is barred by the doctrine of res judicata*

The defendants argue that the doctrine of res judicata bars reconsideration of this lawsuit in light of the disposition of the 1958 state court action filed by Dock Bell against Thomas Grady and the City of Milwaukee.[4] The plaintiffs strongly oppose the application of res judicata principles to the present action, arguing that the doctrine does not bar their § 1983 action because of the following circumstances: (1) the plaintiffs will rely in this second action on evidence that could not have been presented in the 1958 state court action because of the defendants' fraud and concealment; (2) Dock Bell did not seek a § 1983 remedy in the 1958 state court action; and (3) Dock Bell was unable to seek a § 1983 remedy in the 1958 state court action. In its consideration of the defendants' argument that the doctrine of res judicata bars consideration of this lawsuit, the court has determined that the record contains sufficient evidence that the parties to the 1958 state court action entered into a binding settlement contract. See *Boutelle v. Winne*, 40 Wis.2d 360, 366, 162 N.W.2d 40 (1968). Notwithstanding the binding settlement entered into between Dock Bell and the defendants Grady and the City of Milwaukee, the Court is unpersuaded by the defendants' argument.

Turning first to the plaintiffs' argument that they will rely in this second action on evidence that could not have been presented in the 1958 state court action on account of the fraud and concealment on the part of the defendants, the Court is persuaded that the fact that Thomas Grady and the City of Milwaukee obtained a release and discharge from Dock Bell's attorney (see Exs. 14 & 15), does not bar this civil rights action.

■ In general, 28 U.S.C. § 1738 is the starting point for any analysis of the extent to which a prior state court judgment precludes a subsequent federal civil rights lawsuit:

"The * * * judicial proceedings of any court of any state * * * shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such state."

That statute imposes on this Court the obligation to give full faith and credit to judgments entered by state courts of competent jurisdiction and to apply the concepts of res judicata and collateral estoppel which would be employed by the courts of the state in which the prior judgment was rendered. See *Winters v. Lavine*, 574 F.2d 46 (2nd Cir. 1978).

■ In Wisconsin, a state court judgment has no binding effect in subsequent litigation where the plaintiff proposes to rely on evidence that he was unable or failed to present in the first action on account of the defendant's fraud or concealment. See, e. g., *Hammes v. First Nat'l Bank & Trust*, 79 Wis.2d 355, 363, 255 N.W.2d 555 (1977); see also Restatement (2d) Judgments § 61.2 (Tent. Draft No. 1 1973); Restatement (2d) Judgments § 118(1)(b) (Tent. Draft No. 6 1979).

■ The record before the Court is replete with allegations of fraud, concealment and a broad-based cover-up on the part of the defendants Milwaukee Police Depart-

---

4. According to the defendants' application of the doctrine, the res judicata effects of the 1958 state court action brought by Dock Bell against Thomas Grady and the City of Milwaukee are: (1) preclusion of Dock Bell's § 1983 remedy against the defendants Grady and the City of Milwaukee because of merger of that remedy into the settlement reached in the 1958 state court action; (2) preclusion of the remaining plaintiffs' § 1983 remedies against the defend-

ants Grady and the City of Milwaukee because of the remaining plaintiffs' privity with Dock Bell; and (3) preclusion of both claims and issues in favor of the remaining defendants to this action as against all of the plaintiffs to this action, because of the settlement reached in the 1958 state court action, the substantial identity between the 1958 state court action and the present action, and the privity of the plaintiffs with a party to the 1958 state court action.

ment, Howard Johnson, Edwin Shaffer, Thomas Grady, and the Office of the Milwaukee County District Attorney. Based on the state of the record, and applying the same exception for fraud and concealment to the general rules concerning the effects of former adjudications that would be applied by the Wisconsin courts, the Court is persuaded that the doctrine of res judicata does not bar this civil rights action and that the defendants' motion for summary judgment on the grounds of res judicata must be denied.[5]

### B. *Whether this action is barred by the statute of limitations*

As a factual background for consideration of the issue of whether this action is barred by the statute of limitations, defendants City of Milwaukee and Howard Johnson previously moved to dismiss this action on the basis that it was barred by the statute of limitations, arguing that "the longest statute of limitations the court could apply in Sec. 893.19, which provides for a six-year limitation for actions based upon liability created by statute." Brief of defendants, City of Milwaukee and Howard Johnson, in support of the motion to dismiss at 11 (filed February 19, 1980). This Court rejected that argument, stating:

"Under Wisconsin law, a defendant is estopped from pleading the statute of limitations where his own fraudulent conduct has prevented the plaintiff from filing suit within the applicable time period. *Boehm v. Wheeler*, 65 Wis.2d 668, 681, 223 N.W.2d 536 (1974). In this case, plaintiffs have alleged that the defendants intentionally concealed the true facts concerning the death of Daniel Bell, thereby preventing them from obtaining the knowledge necessary to institute this lawsuit. Only when Louis Krause went

to the authorities in August, 1978, were the true facts known. If the jury finds these allegations to be true, the defendants will be estopped from arguing that the claims against them are time barred. At this stage of the proceedings, of course, the allegations of fraudulent concealment must be taken as true. Accordingly, the amended complaint may not be dismissed on the ground that the statute of limitations has expired."
(*Bell v. City of Milwaukee*, C.A. No. 79–C–927 (Oct. 20, 1980)

Presently, the defendants to this action move for summary judgment on the basis that this action is barred by the longest statute of limitations that the Court might apply, arguing that the plaintiffs are precluded from invoking the doctrine of estoppel by fraudulent concealment to toll the statute of limitations. The plaintiffs vigorously oppose the application of the statute of limitations defense to the present action, arguing (1) that the doctrine of fraudulent concealment to toll the statute of limitations is applicable to this action, and (2) that, under the circumstances of this action, any Wisconsin rule of law which prevented a plaintiff from litigating the merits of his § 1983 claim is inconsistent with the policies underlying § 1983. For the reasons that will be offered shortly, the Court is persuaded that the statute of limitations defense should not be applied to the present civil rights action.

█ In most of § 1983 actions, the state statute of limitations and the coordinate tolling rules are binding rules of law. See, *Board of Regents v. Tomanio*, 446 U.S. 478, 484, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980). The exception to the general rule is the case in which the applicable state rule of law is inconsistent with the federal policy

---

**5.** The Court believes it is unnecessary and inappropriate for this Court to resolve the difficult questions of: (1) whether a plaintiff might have raised a § 1983 remedy in the Wisconsin courts at or about the time Dock Bell commenced his 1958 state court action, in light of the fact that the Wisconsin Supreme Court did not explicitly authorize the opening of the Wisconsin court to a § 1983 plaintiff until 1977, in the case of

*Terry v. Kolski*, 78 Wis.2d 475, 254 N.W.2d 704 (1977), and (2) whether a § 1983 claimant can litigate in federal court an issue he might have raised but did not raise in previous litigation due to the exceptional nature of the § 1983 remedy. The facts in the record before the Court simply do not require the Court to reach those weighty questions.

underlying the cause of action under consideration. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

The defendants argue that the applicable and binding state rule of law bars the consideration of this action even under the longest statute of limitations period of six years. In support of this argument, the defendants rely extensively on *Boehm v. Wheeler*, 65 Wis.2d 668, 223 N.W.2d 536, in which the Wisconsin Supreme Court stated:

" * * * This court has recognized that a defendant may in the proper case be estopped from asserting the statute of limitations because of fraudulent conduct. *State ex rel. Susedik v. Knutson* (1971), 52 Wis.2d 593, 191 N.W.2d 23. In that case the court enumerated the following rules to be applied in determining whether the defendant should be estopped from asserting the statute of limitations:

(1) The doctrine of estoppel may be applied to preclude a defendant from asserting the statute of limitations when he has been guilty of fraudulent or inequitable conduct;

(2) the aggrieved party must have failed to commence an action within the statutory period because of reliance upon the representation or acts of the defendant;

(3) the acts, promises or representations must have occurred before the expiration of the limitation period;

(4) after the inducement for delay has ceased to operate the aggrieved party may not unreasonably delay;

(5) affirmative conduct of the defendant may be equivalent to a representation upon which the plaintiff may rely to his disadvantage; and

(6) actual fraud, in a technical sense, is not required." 65 Wis.2d at 681, 223 N.W.2d 536.

The defendants argue that the plaintiffs cannot invoke the doctrine of estoppel by fraudulent concealment to toll the statute of limitations since they fail to meet the requirements imposed by the *Boehm* case; that is, the plaintiffs fail to meet the second

rule enumerated in the *Boehm* case since the record shows that Bell family members did not believe or rely on the reports and testimony concerning the shooting of Daniel Bell and that the plaintiffs did not fail to commence an action within the statutory time period. The defendants further argue that since the plaintiffs should be precluded from invoking the doctrine of estoppel by fraudulent concealment to toll the statute of limitations in state court, it follows that the applicable and binding state rule of law precludes them from invoking such tolling in the federal court.

The Court is not persuaded by the defendants' arguments. First, the Court is not persuaded that the plaintiffs have failed to meet the requirements enumerated in *Boehm*. With respect to the defendants' contention that the plaintiffs did not fail to commence an action within the statutory time period, while it is true that Dock Bell filed a state court action for wrongful death and indemnification, the fact remains that the plaintiffs have alleged that the defendants intentionally concealed the true facts concerning the death of Daniel Bell, thereby preventing them from obtaining the knowledge necessary to institute a lawsuit for the violation of their civil rights. Thus, the plaintiffs have alleged that they failed to commence an action within the statutory period. With respect to the defendants' contention that the plaintiffs did not believe or rely on the reports and testimony concerning the shooting of Daniel Bell, while it is true that the plaintiffs had their doubts concerning such reports and testimony, the fact remains that the plaintiffs have alleged that the defendants caused or permitted the plaintiffs to believe a thing to be true and to act in a manner different than they would have acted. Inaction on the part of the plaintiffs because of what the defendants abstained from doing or saying and what the defendants permitted the plaintiffs to believe as true so closely parallels reliance that any attempt to distinguish the two in the context of this case can amount to more than semantic legerdemain. It is indeed a subtle notion

that the second rule enumerated by the *Boehm* court speaks to reliance upon what the defendant does or says, while the thrust of this case concerns reliance upon what the defendant abstained from doing or saying, yet to say that *Boehm* is controlling in the instant case might invite the very intentional concealment alleged to have occurred here. Thus, the plaintiffs' allegations persuade the Court that the defendants conduct was done with the intention or expectation that it would be acted upon by the plaintiffs.

Second, the Court is not persuaded by the defendants' argument that the six enumerated rules in *Boehm* constitute the applicable and binding state tolling rule of law, because their interpretation of the *Boehm* case and the nature and scope of a court's equity powers is exceedingly restrictive. Equitable estoppel, including the doctrine of equitable estoppel by fraudulent concealment, is pre-eminently the creature of equity, recognized by the common law at a very early day. See 3 Pomeroy, Equity Jurisprudence § 802, at 179–81. The doctrine of equitable estoppel was recognized and had its original and far-reaching nature preserved at an early day by Wisconsin courts:

"The doctrine of estoppel is of far-reaching character. While it has been spoken of by some writers with a measure of discredit, as this court remarked in *Marling v. FitzGerald*, 138 Wis. 93, 120 N.W. 388, 'It is entitled to the distinction of being one of the greatest instrumentalities to promote the ends of justice which the equity of law affords.' Where the facts call for its application in order to prevent injustice being done, it 'has the field to itself' superseding all other rules which have not fully acted upon the particular situation. It absolutely precludes, both at law and in equity, a party 'from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has

been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy.'

2 Pom.Eq.Jur. (3d ed.) § 804."

*Union Bank v. Commercial Securities Co.*, 163 Wis. 470, 481–82, 157 N.W. 510 (1916). That the far-reaching nature of the doctrine of estoppel remains intact after *Boehm* is demonstrated by that very case. To be sure, after its enumeration of rules intended to demonstrate the propriety of the doctrine of equitable estoppel in the particular case, see *State ex rel. Susedik v. Knutson*, 52 Wis.2d 593, 596, 191 N.W.2d 23 (1971), the *Boehm* court went on to state that the " ' * * * issue is whether the conduct and representations of appellant were so unfair and misleading as to outbalance the public's interest in setting a limitation on bringing actions.' *State ex rel. Susedik v. Knutson*, supra, page 598, 191 N.W.2d 23." *Boehm v. Wheeler*, 65 Wis.2d at 681, 223 N.W.2d 536.

■ It is the Court's opinion, then, that the applicable and binding state rule of law on the application of the doctrine of estoppel by fraudulent concealment is not whether each of the six guides enumerated in *Boehm* is precisely met, but rather is whether the defendants' conduct and representations were so unfair and misleading as to outbalance the public's interest in setting a limitation on an action and thus carve an exception for that action out of the statute of limitations. See *State ex rel. Susedik v. Knutson*, 52 Wis.2d 593, 598, 191 N.W.2d 23 (1971).

■ Applying the above authority to the allegations in this case, it is my opinion that allegations of a broadly based, racially motivated conspiracy by public officials and employees designed to conceal and cover-up the wrongful acts of a City of Milwaukee police officer, if true, are allegations of conduct so unfair, misleading, and outrageous as to outbalance the public's interest[6]

---

**6.** The Wisconsin Supreme Court in *Peterson v. Roloff*, 57 Wis.2d 1, 6, 203 N.W.2d 699 (1972),

addressed the public's interest in setting a limitation on bringing actions, stating:

in setting a limitation on bringing an action and thus carves an exception out of the statute of limitations. See *State ex rel. Susedik v. Knutson*, 52 Wis.2d 593, 598, 191 N.W.2d 23 (1971). The plaintiffs' allegations concerning the defendants' conduct, if true, persuade the Court that as a matter of law, this action is not an appropriate one in which to apply the statute of limitations. Accordingly, the defendants' motion for summary judgment on the ground that the statute of limitations bars consideration of the plaintiffs' civil rights action is denied.[7]

C. *Whether summary judgment can be granted on the grounds that District Attorney McCauley represented the State of Wisconsin or that District Attorney McCauley is absolutely immune from liability for damages under 42 U.S.C. § 1983*

■ The defendants County of Milwaukee and Office of the Milwaukee County District Attorney have moved for summary judgment on the grounds that District Attorney William McCauley represented the State of Wisconsin, not Milwaukee County, at the coroner's inquest held in connection with the shooting of Daniel Bell and that District Attorney William McCauley is absolutely immune from liability for damages under 42 U.S.C. § 1983 for alleged civil rights violations committed in the course of initiating a prosecution and in presenting the state's case.

This Court has already ruled that District Attorney McCauley acted as a county official, *Bell v. City of Milwaukee*, C.A. No. 79–C–927 (February 13, 1981, at 5, 11), and that the alleged activities of William McCauley fell outside the sphere of activity for which prosecutors are given absolute immunity. *Id.* at 8. That is the law of this case and since nothing new has been

presented to the Court, these rulings will not be reexamined anew. Accordingly, the defendants Milwaukee County and Office of Milwaukee County District Attorney's motion for summary judgment based on these two grounds will be denied.

For the foregoing reasons,

IT IS ORDERED that the motions for summary judgment brought by the defendants City of Milwaukee, Howard Johnson, Edwin Shaffer, the Milwaukee Police Department, Milwaukee County, and the Office of Milwaukee County District Attorney are hereby denied.

---

"The question of what the statute of limitations should be as to any cause of action is a question of public policy. Two conflicting policies confront each other when statutes of limitation are presented: (1) That of discouraging stale and fraudulent claims, and (2) that of allowing meritorious claimants, who have been as diligent as possible, an opportunity to seek redress for injuries sustained."

7. The Court also believes it is unnecessary and inappropriate to resolve the difficult question of whether a federal doctrine of tolling on account of fraudulent concealment would displace an otherwise applicable state rule of law due to the exceptional nature of the § 1983 remedy.